Argued July 9, reversed and remanded September 26, petition
for rehearing denied October 22, 1974

## BRYANT, *Appellant, v.* SEAGRAVES ET AL, *Respondents.*

526 P2d 1027

*James D. Vick,* of Stager & Vick, Salem, argued the cause and filed briefs for appellant.

*James Sutherland,* of Frohnmayer & Deatherage, Medford, argued the cause and filed a brief for respondents.

Before O'CONNELL, Chief Justice, and DENECKE,[*] HOLMAN, TONGUE, HOWELL and BRYSON,[*] Justices.

O'CONNELL, C. J.

This action was brought by plaintiff against a law partnership to recover damages for the loss of certain mineral rights allegedly suffered by his wife, Mrs. Nettie Bryant, now deceased, as a result of defendants' malpractice. The trial court held in favor of defendants and plaintiff appeals.

Defendants previously had defended Mrs. Bryant in a lawsuit brought by Longview Fibre Co. against Mrs. Bryant and which Longview Fibre Co. won in the trial court. The present complaint alleges that "the defendant carelessly and negligently failed to prepare the Appellant's Abstract of Record and

---

[*] Denecke and Bryson, JJ., did not participate in this decision.

Brief and that on July 28, 1970, the Supreme Court notified the defendant Seagraves that the appeal would be dismissed within 30 days if no proceedings were filed. That defendant Seagraves failed to file any proceedings and on [August 28, 1970], the appeal was dismissed."

The parties stipulated that one of the issues in the present action is whether or not an appeal in the case of Longview Fibre Co. v. Bryant would have resulted in a reversal of the trial court. It was further stipulated "That the parties agree that this is a matter of law to be determined by the court and that the court in determination thereof may review the trial court file, the transcript of testimony, all exhibits and briefs or memorandum of the parties in [Longview Fibre Co. v. Bryant]."

Plaintiff concedes that he can recover in the present action only if he can prove that this court would have reversed the decision in the Longview Fibre Co. v. Bryant case had the appeal been properly pursued[1] and that, in essence, the present case presents the same question which would have been presented in the previous proceeding if the appeal had been properly taken. We turn, then, to the facts of that case.

Some time prior to 1968, the Longview Fibre Co. purchased the surface rights to certain lands, hereafter referred to as the Cowboy and Queen of Bronze Claims. Josephine County previously had

[1] Harding v. Bell, 265 Or 202, 508 P2d 216 (1973); King v. Jones, 258 Or 468, 483 P2d 815 (1971); Hammons v. Schrunk, 209 Or 127, 305 P2d 405 (1956); Milton v. Hare, 130 Or 590, 280 P 511 (1929); Annotation: Attorney's Liability for Negligence in Preparing or Conducting Litigation, 45 ALR2d 5, § 5[a] at 19-20, 55-58 (1956).

gained title to this property by the foreclosure of tax liens and, under authority of ORS 275.110,[2] had sold the property reserving the mineral rights to itself. In August, 1968, in compliance with ORS 275.110 to 275.-140, the county put these rights up for sale at a sheriff's auction at a minimum price of $25,000. No bids were submitted and the county commissioners decided, under authority of ORS 275.030, to sell these rights by private sale to the first person to offer $5,000, plus the costs incurred in the fruitless auction. Mrs. Bryant immediately purchased the rights and the county notified Longview Fibre of the sale. Shortly thereafter, Longview Fibre notified the county that it was exercising its preferential rights under ORS 275.298[3] and tendered an amount equal to the price paid by Mrs. Bryant to the county. The county refused to accept the tender and declined to convey the mineral rights to Longview, relying on subsection (3) of ORS 275.298. Longview thereafter sought declaratory relief in the Circuit Court of Josephine County,

---

[2] "Whenever any county court deems it to be for the best interests of the county to sell any real property acquired by such county by foreclosure of delinquent tax lien or by exchange, devise or gift, or any interest therein less than the whole fee, it shall enter an order upon its records directing the sheriff to make sale thereof, and fix the minimum price for which each interest, parcel or group of parcels may be sold and the conditions and terms of sale. The order may be amended from time to time or revoked as the court may deem proper."

[3] "(1) In any sale hereafter made under ORS 275.110 to 275.250 of minerals or mineral rights heretofore reserved to a county where such minerals or mineral rights were acquired by a county by foreclosure of delinquent tax liens, the holder of an interest less than the fee in the same lands where the mineral rights are located shall have the right to purchase such minerals or mineral rights interest by depositing with the sheriff within 60 days from date of sale not less than the high amount bid for the minerals or mineral rights by a third person. If no sale was made at the offering, then such person shall have the right to

claiming that ORS 275.298 (3) was unconstitutional on equal protection grounds and that, in any case, the exclusion was inapplicable because the lands in question were not "suitable for the commercial production or development of timber." The trial judge ruled in favor of Longview on both grounds, ordered the sale to Mrs. Bryant to be set aside, and directed the county to convey the mineral rights in question to Longview. It is the appeal from the judgment in favor of Longview which defendants here allowed to lapse.

■■ Longview's contentions presented both a constitutional and a factual question for argument on appeal. On the constitutional issue it is clear that the trial court erred in holding ORS 275.298 (3) unconstitutional. In the first place, Longview bore the burden of establishing that there was no rational basis for treating lands suitable for commercial timber production differently from lands not so suited. Longview failed to produce any evidence in this respect whatsoever. Consequently, there was no factual basis on which the court could have determined that the statutory distinction was irrational.[@]

Moreover, the distinction made in ORS 275.298 (3) has a clearly rational basis. The legislative history

---

purchase at whatever price the county court or board of county commissioners deems reasonable.

"(2) Unless the purchaser at any sale is the owner of some interest less than the fee, the execution of a deed shall be postponed for 60 days from the date of sale in order to give the party granted preferential right under subsection (1) of this section, or his assignee, the right to exercise his preference in the manner set forth in subsection (1) of this section.

"(3) The provisions of this section shall not be applicable to the sale of mineral rights on or under any land suitable for the commercial production or development of timber."

[@] Duerst v. Limbocker, 269 Or 252, 525 P2d 99 (1974).

of the first two subsections of the statute reveals that farmers and ranchers working property in which mineral rights were held separately by the county frequently had difficulty obtaining financing on such land because the county interest was viewed by lending institutions as a cloud on the title. It was felt, therefore, that merger of surface and mineral rights should be encouraged. However, it was recognized that this goal would be frustrated if surface owners were required to bid along with others at a public auction, since they would be unwilling to engage in conduct which would simply result in driving up the price they would have to pay. Thus, the preferential purchase right of ORS 275.298 (1) was given to such owners. At the same time, it appeared that surface owners of timber lands had not experienced comparable financing difficulties. Therefore, title merger on such lands was not necessarily to be encouraged at the expense of the goal of producing maximum income for the counties through vigorous public bidding. Consequently, ORS 275.298 (3) excluded timberland owners from preferential purchases in order to force them to enter the open market. There is, then, a rational basis for the statute and it is free from constitutional attack.[9]

■ The remaining question is whether the decision in the Longview action could have been sustained on the ground that the lands in question were not "suitable for the commercial production or development of

_____

[9] *See* State v. Pyle, 226 Or 485, 489-90, 360 P2d 626 (1961), where we noted it has long been recognized by this court that the legislature properly may accord special treatment to foster a desirable industry. Anderson v. Thomas, 144 Or 572, 26 P2d 60 (1956). Moreover, even similarly situated economic interests may be treated differently as the legislature remedies problems one at a time. *See* Bennett v. Oregon State Bar, 256 Or 37, 470 P2d 945 (1970). See also Railway Express v. New York, 336 US 106, 69 S Ct 465, 93 L Ed 533 (1949).

timber." The evidence in this respect was somewhat conflicting. Several timber experts presented ratings based on site inspections. Using official United States Forest Service standards,[⊗] Longview's expert testified that he rated 2.9% of the land Site III or IV, 7.8% Site IV, 28.7% Site IV or V, and 57.7% Site V. Mrs. Bryant's expert rated 70% Site IV and 30% Cite V. Both agreed that none of the land involved was Site I or II quality. In addition, Longview's evidence indicated that an area of the Cowboy Claim which had previously been logged off displayed slow growth recovery and that as a general matter none of the land could be successfully logged commercially, although it might have been possible at the time of trial due to the especially high market then prevailing. Longview's expert also stated that if his opinion were sought by a commercial logger, he would recommend that the land not be purchased for logging purposes.

There was substantial evidence, however, that commercial logging was possible on the land in question. The property was classified as forest land on the county tax rolls. One of Mrs. Bryant's experts testified that the highest and best use of the land was for the production of forest growth. It was rated as comparable to other lands held by the county which were used for timber production on a sustained yield basis. These particular parcels had been logged previously by loggers on contract with the county. This must be discounted, however, by the fact that commercial logging costs are higher than the costs incur-

---

[⊗] These standards appear in Forest Service, U. S. Department of Agriculture Technical Bulletin Number 201, The Timber Cruiser's "Bible." The ratings, technically known as Sites, range from I (excellent) to V (very poor). The standards appear to gauge timber productivity potential, and thus are independent of actual present timber stands.

red when under county ownership. Mrs. Bryant's expert testified that a cruise he conducted shortly before trial indicated that approximately 465,000 board feet were then standing on the property. The County Director of Parks and Forests testified that this land was comparable to land then being commercially logged and even Longview's expert conceded that the Queen of Bronze Claim was suitable for commercial production. It was also established that most of the timber land in Josephine County not owned by the federal government was Site IV or Site V quality land and that this land has "kept a lot of loggers busy for a lot of years logging these sites."

The nature of the relief sought and the manner of trial involved in the proceeding for declaratory relief having been equitable, our scope of review of these factual issues is equitable.[7] Consequently, we view the evidence *de novo.*

We believe the evidence established that the majority of this land was suitable for the commercial production of timber. It follows that the trial court's decision to the contrary was erroneous and would have been reversed on appeal. Therefore, the decision of the trial court in the present cause is reversed and the case is remanded for further proceedings.[8]

[7] ORS 28.090. Oregon Farm Bureau v. Thompson, 235 Or 162, 378 P2d 563, 384 P2d 182 (1963).

[8] Both parties to the present action have raised arguments not made in the original proceedings. Plaintiff argues that the trial court erred in permitting Longview to challenge the decision of the county commissioners in a suit for declaratory relief instead of through the writ of review procedure established in ORS 203.200. Defendants argue that in addition to the equal protection argument, ORS 275.298 (3) is invalid because the phrase "suitable for the commercial production or development of timber" is unconstitutionally vague. Since neither claim would have been considered on the original appeal, we may not consider them here.