# Louis Goldstein

## v.

# Joseph W. Kaestner

Record No. 910302

January 10, 1992

Present: All the Justices

*John W. Ferrell (Joseph E. Blackburn, Jr.; White, Blackburn & Conte,* on brief), for appellant.

*William D. Bayliss (Dana D. McDaniel; Williams, Mullen, Christian & Dobbins,* on brief), for appellee.

JUSTICE KEENAN delivered the opinion of the Court.

In this appeal of a legal malpractice action, we consider two issues: (1) the appropriate standard of review in cases of this nature; and (2) whether the trial court erred in entering judgment for the defendant based on its finding that, as a matter of law, the verdict for lost profits reached in the underlying action was valid.

The legal malpractice claim arose out of a suit between a tenant, Schwartz Supermarkets, Inc. (Schwartz), and its landlord, Louis Goldstein. Goldstein was represented by Joseph W. Kaest

ner, the appellee herein. Schwartz filed a motion for judgment seeking damages based on Goldstein's alleged failure to rebuild Schwartz's store in a timely manner, as required by the lease, after the store was destroyed by fire. The rebuilding was not completed until more than two years after the fire. Schwartz sought recovery of lost profits for 449 days, which represented the time beyond the nine-month period within which Schwartz claimed that the rebuilding should have been completed. Goldstein asserted that lost profits were not recoverable because Schwartz could not prove them with reasonable certainty. Schwartz had operated the supermarket for only 82 days prior to the fire.

Schwartz maintained that lost profits could be reasonably determined because its predecessor, Koslow's Super Markets, Inc. (Koslow), had operated at this same location for twenty years. Further, there had been no interruption of business operations as a result of the sale. Stephen Schwartz testified that Koslow closed on a Sunday evening, and Schwartz opened for business on the following morning.

Schwartz had retained a majority of Koslow's employees, including one of its owners, Morris Koslow, and it had purchased Koslow's inventory, equipment, and goodwill. Further, Schwartz acquired the right to use Koslow's name for two years after the purchase and was actually operating under that name at the time of the fire.

In support of its claim for lost profits, Schwartz presented the testimony of George Rochkind, a certified public accountant. Rochkind estimated a range of lost profits from $308,000 to $848,500. He testified that in making such estimates, it was customary for accountants to use the predecessor company's operating history in computing the successor company's lost profits. There was also evidence which showed that during the 82-day period prior to the fire, Schwartz maintained a higher gross profits percentage than Koslow had attained prior to the change in ownership.

Goldstein's expert, Malcolm L. Wells, also a certified public accountant, disputed Rochkind's results but did testify that he would compute lost profits by using a percentage "more similar to what Koslow experienced."

The jury reached a verdict for Schwartz for $160,000 in lost profits and the trial court entered judgment for Schwartz in accordance with this verdict. Goldstein decided to appeal the judgment

of the trial court. However, Kaestner failed to perfect an appeal on his behalf. Consequently, Goldstein filed suit against Kaestner, alleging that as a result of Kaestner's negligence, he suffered a loss of $160,000, the amount of lost profits damages fixed against him in the underlying action.

After hearing the argument of the parties and reviewing stipulated exhibits and portions of the transcript in the underlying action, the trial court entered judgment for Kaestner, finding that his failure to perfect an appeal of the lost profits verdict did not damage Goldstein since that suit was properly decided in Schwartz's favor. This appeal followed.

Initially, we must determine the proper standard of review for an appeal of a legal malpractice action where the trial court has entered judgment for the defendant/attorney. In so doing, we recognize the importance of balancing the need to have attorneys held accountable for their negligent acts which result in damage to their clients, against the right of all individuals, including attorneys, to have damages properly proved before a judgment is entered against them.

■ Upon consideration of these factors, we hold that the appropriate standard of review in an action of this nature is whether the client can prove that, had a timely appeal been filed, as a matter of law the judgment against him would have been reversed and judgment entered in his favor. This is in accord with the standard of review articulated by several other jurisdictions. *See Bryant* v. *Seagraves*, 270 Or. 16, 18, 526 P.2d 1027, 1028 (1974); *Millhouse* v. *Wiesenthal*, 775 S.W.2d 626, 627 (Tex. 1989); *Daugert* v. *Pappas*, 104 Wash. 2d 254, 258-59, 704 P.2d 600, 604 (1985); *Gen. Accident Fire & Life Assurance Corp., Ltd.* v. *Cosgrove*, 257 Wis. 25, 28, 42 N.W.2d 155, 157 (1950); *Phillips* v. *Clancy*, 152 Ariz. 415, 421, 733 P.2d 300, 306 (Ariz. Ct. App. 1986); *cf. Allied Productions* v. *Duesterdick*, 217 Va. 763, 765-66, 232 S.E.2d 774, 775-76 (1977). Therefore, in the context of the case before us, we must determine whether, if Kaestner had perfected Goldstein's appeal, Goldstein would have been entitled as a matter of law to a reversal of the judgment against him for lost profits.

■ We have held that, where a new business is involved, lost profits may not be proved by using the profits history of another business. *Mullen* v. *Brantley*, 213 Va. 765, 769, 195 S.E.2d 696, 700 (1973); *Shopping Plazas* v. *Olive*, 202 Va. 862, 869-70, 120 S.E.2d 372, 377-78 (1961). The reason for this is that profits de-

rived from other businesses "do not present a reasonable basis upon which to judge with any degree of reasonable certainty what the profits would have been." *Mullen*, 213 Va. at 769, 195 S.E.2d at 700. Any such estimate of profits would be based on speculation and conjecture. *Id.*

Goldstein argues that Schwartz was a new business, and therefore, was not entitled to use Koslow's profits history to establish lost profits. He asserts that Schwartz's situation was similar to that of the plaintiff in *Whitehead* v. *Cape Henry Syndicate*, 111 Va. 193, 68 S.E. 263 (1910). In *Whitehead*, this Court held that, since the plaintiff had operated his business for only one month prior to its interruption by the defendant's action, he had not established a sufficient history to show with reasonable certainty what profits, if any, he had lost. 111 Va. at 197, 68 S.E. at 264.

Goldstein contends that the testimony received by the trial court supports his argument under *Whitehead*. He cites testimony from the record that the management team of Schwartz was different from Koslow's management group and that, at the time of the fire, new management decisions were being made by Schwartz which would affect future profits. Goldstein also points to testimony in the record that the Schwartz management team attempted to give the store a new appearance and that many customers, who concluded that there had been a change in ownership, boycotted the store for several weeks.

We disagree with Goldstein's position. The issue here is not whether Koslow was under new ownership. Rather, it is whether the changes in operation made at that time created an essentially different business, and whether Schwartz's evidence established lost profits damages with reasonable certainty. *See Mullen*, 213 Va. at 768-69, 195 S.E.2d at 699-700; *Olive*, 202 Va. at 869, 120 S.E. at 377; *Whitehead*, 111 Va. at 197, 68 S.E. at 264. In order to award lost profits, the trier of fact must have evidence which provides a sufficient basis for estimating profits with reasonable certainty. *Boggs* v. *Duncan*, 202 Va. 877, 883, 121 S.E.2d 359, 363 (1961). However, this does not require the plaintiff to prove an exact monetary amount. As we stated in *Murray* v. *Hadid*, 238 Va. 722, 385 S.E.2d 898 (1989), "[a] plaintiff is not required to prove the exact amount of his damages; however, he is required to show sufficient facts and circumstances to permit a jury to make a reasonable estimate of those damages." 238 Va. at 731, 385 S.E.2d at 904.

■ The trial court, in the underlying action, received extensive evidence establishing the nearly identical operating characteristics of Schwartz and Koslow. As stated above, Schwartz had purchased the right to use Koslow's name and was in fact operating under that name at the time of the fire. Although there was general testimony that new management decisions were being undertaken, the record contains no evidence of any specific decisions beyond the decision to paint the store's interior and remodel some shelving. Except for these shelving alterations, the equipment and inventory of the store remained the same until the date of the fire. Also, as noted above, several of Koslow's employees, including Koslow family members and others in its management team, continued as employees of Schwartz. We find that this evidence provided a sufficient basis for the jury, in the underlying action, to conclude that the day-to-day operations of the store under Koslow and Schwartz were substantially the same.

■ We also conclude that, under the prior decisions of this Court, the trial court did not err in allowing evidence of Koslow's profits history to be presented to the jury. In *Whitehead*, the plaintiff had obtained a license to fish in certain waters. He had been fishing those waters only one month before a competitor alleged that he was trespassing upon its rights. Thus, we found that the available operating history was insufficient to provide a basis for estimating the plaintiff's lost profits. 111 Va. at 197, 68 S.E. at 264. Here, in contrast, Schwartz had purchased an ongoing business of several years duration which it continued to operate in substantially the same manner as the predecessor business. We find that this commonality of operating procedures and inventory provided a basis upon which lost profits could be estimated with reasonable certainty.

■ In *Mullen* and *Olive*, we also addressed the measure of lost profits damages. In *Mullen*, we reversed a judgment for lost profits which was based on both the operational history of other franchises in different locations and the national profits average of that particular chain of franchises. Similarly, in *Olive*, we reversed a judgment for damages where the evidence was based on profits projected from the operation of a gasoline station which never opened for business. There, the plaintiff attempted to use evidence of profits made at other stations which he operated in different locations. Thus, unlike the case before us, neither *Mullen* nor *Olive* involved the purchase of an ongoing business. We find

this distinction critical in our determination that lost profits were proved with reasonable certainty in the case before us.

 For the reasons stated, we find that had Kaestner entered a timely appeal of the judgment against Goldstein, this would not have resulted in a reversal of the cause and an entry of judgment in favor of Goldstein as a matter of law. Accordingly, we will affirm the trial court's judgment.*

*Affirmed.*

---

* Goldstein limited his assignment of error to one issue, whether as a matter of law a new business can establish lost profits based on the financial history of a predecessor business. Accordingly, we do not address his additional allegation within the body of his brief that Rochkind's testimony was otherwise objectionable because of the range of estimates contained therein and the relationship of the estimates to the amount of the jury's verdict.