UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CONMED CORPORATION; ASPEN
LABORATORIES, INCORPORATED,
                    *Plaintiffs-Appellants,*

            v.                                        No. 99-1463

LARSON & TAYLOR,
                    *Defendant-Appellee.*

CONMED CORPORATION; ASPEN
LABORATORIES, INCORPORATED,
                    *Plaintiffs-Appellees,*

            v.                                        No. 99-1514

LARSON & TAYLOR,
                    *Defendant-Appellant.*

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-98-279-A)

Argued: December 2, 1999

Decided: October 31, 2002

Before WIDENER and MICHAEL, Circuit Judges and
HAMILTON, Senior Circuit Judge.

Affirmed by unpublished opinion. Judge Widener wrote the opinion,
in which Judge Michael and Senior Judge Hamilton joined.

**COUNSEL**

**ARGUED:** Alan J. Pierce, HANCOCK & ESTABROOK, L.L.P., Syracuse, New York, for Appellants. David P. Durbin, JORDAN, COYNE & SAVITS, L.L.P., Washington, D.C., for Appellee. **ON BRIEF:** Stephen G. Cochran, THE JEFFERSON LAW FIRM, P.L.C., McLean, Virginia, for Appellants.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

WIDENER, Circuit Judge:

Appellants ConMed Corporation (ConMed) and Aspen Laboratories, Inc. (Aspen) appeal the district court's grant of Appellee's, Larson & Taylor, motion for summary judgment. Because Larson & Taylor's actions were not the proximate cause of injury to ConMed and Aspen, we affirm the decision of the district court.

This legal malpractice action stems from an underlying patent case reported as *Megadyne Medical Products, Inc. v. Aspen Laboratories, Inc.*, 864 F. Supp. 1099 (D. Utah 1994). Aspen manufactures and sells medical instruments to the health care industry. In 1991, Aspen, a subsidiary of ConMed, was sued by Megadyne Medical Products, Inc. (Megadyne) in the district court in Salt Lake City, Utah for infringement of Megadyne's patent on an electrosurgical blade.[1] Larson & Taylor represented Aspen in the Utah patent infringement action.

---

[1]Megadyne's founder procured the patent in 1988. The patent was recorded as Patent No. 4,785,807 (the '807 patent). The instrument patented is an electrosurgical blade coated in fluorinated hydrocarbon material.

An electrosurgical blade utilizes electricity in the aid of cutting flesh.

## I.

At the close of Megadyne's case in chief in the Utah action, Larson & Taylor moved for a directed verdict pursuant to Fed. R. Civ. P. 50(a) on the issue of patent infringement. However, Larson & Taylor did not move at that time for a directed verdict on the issue of invalidity of the patent. At the close of all the evidence, Larson & Taylor did not make or renew any motion for directed verdict. The jury returned a verdict for Megadyne in the amount of $1.92 per unit, finding that the '807 patent was not invalid, that Aspen's surgical blade infringed upon the '807 patent, and that the infringement was willful.[2]

After the jury's verdict, Larson & Taylor made a rule 50(b) motion for judgment notwithstanding the verdict on the issue of the patent's invalidity. Specifically, Larson & Taylor argued that the proper construction of the patent claim was an issue for the judge and not for the jury. The Utah district court denied the motion, stating that Aspen's failure to raise the issue of the patent's validity in any prior motion for directed verdict made the motion for judgment notwithstanding the verdict untimely under Fed. R. Civ. P. 50(b). *Megadyne Med. Prods.*, 864 F. Supp. at 1105.

Larson & Taylor also moved for a judgment notwithstanding the verdict on the issue of patent infringement and willful infringement. However, because they had not renewed the motion for directed verdict at the close of all the evidence, as generally required by Fed. R. Civ. P. 50(b), the district court denied this motion as well. The district court held that by failing to renew their motion for directed verdict at the close of all the evidence, Aspen forfeited its opportunity to so challenge the factual premise of the adverse jury verdict on a motion for judgment notwithstanding the verdict. *Megadyne Med. Prods.*, 864 F. Supp. at 1106.[3]

---

[2]Among relevant issues for the jury were the extent with which the electrosurgical blade was covered by fluorinated hydrocarbon material, the type of electrical energy that the blade utilized, and the thickness of the blade.

[3]The Utah district court noted the exception in *Armstrong v. Federal National Mortgage Ass'n*, 796 F.2d 366 (10th Cir. 1986), as stated in

Aspen appealed to the United States Court of Appeals for the Federal Circuit. The appeal only concerned the Utah court's denial of the motion for judgment notwithstanding the verdict as it pertained to the infringement issue. Aspen did not challenge the Utah court's denial of the judgment notwithstanding the verdict motion with respect to the invalidity of the '807 patent.

On April 4, 1995, the Federal Circuit entered a judgment affirming the lower court without opinion pursuant to Fed. Civ. R. 36.[4] ConMed and Aspen filed a petition for rehearing and suggestion for rehearing *en banc* that was denied by the Federal Circuit on May 1, 1995. ConMed and Aspen paid the judgment of the Utah district court in the amount of $2,275,866.34 on June 20, 1995 and did not seek certiorari in the Supreme Court. They stated they would pursue further relief by way of re-examination by the Patent and Trademark Office.

In February of 1998, ConMed and Aspen filed this legal malpractice action against Larson & Taylor, alleging that Larson & Taylor attorneys breached the applicable standard of care during trial in the Utah action by failing to move properly for a directed verdict and failing to renew that motion under Fed. R. Civ. P. 50. ConMed and Aspen further alleged that this error caused direct harm to them because the Federal Circuit would have reversed the jury's decision and decided in their favor but for Larson & Taylor's failure to make these motions properly.

After full discovery, both parties filed cross-motions for summary

---

*Karns v. Emerson Electric Co.*, 817 F.2d 1454, 1458 (10th Cir. 1987), which allows consideration of a later motion for judgment notwithstanding the verdict, even after a failure to move for directed verdict at the close of all the evidence when (1) the defendant moved for a directed verdict at the close of plaintiff's evidence, (2) the trial court somehow indicated that the renewal would not be necessary to be preserved, and (3) the evidence introduced after the motion was brief. *Karns*, 817 F.2d at 1456. The Utah district court found that because Aspen failed the third element of the *Armstrong* test, the exception did not apply. *Megadyne Med. Prods.*, 864 F. Supp. at 1106.

[4]See p. 10, infra., for text of that rule.

judgment in the district court. The district court concluded that to prevail on their malpractice claim, ConMed and Aspen were required to show that the Federal Circuit would have found in their favor if Larson & Taylor had made the appropriate motions.[5] After reviewing the proceedings in the Utah district court action and upon oral argument by the parties, the district court held that even if the defendants had made a timely Rule 50 motion at the close of all the evidence, the outcome of the appeal in the Federal Circuit would not have changed.

The district court held that sufficient evidence existed to support the verdict in the Utah district court action and that the Utah jury's construction of the patent claim was sustainable in law. Because ConMed and Aspen thus failed to establish causation and resulting damages, the district court granted summary judgment for Larson & Taylor. ConMed and Aspen appeal the district court's grant of summary judgment, and we affirm.

## II.

We review the district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the non-moving party. See *Myers v. Finkle*, 950 F.2d 165, 167 (4th Cir. 1991). A moving party is entitled to summary judgment if there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

To prevail in a legal malpractice action under Virginia law, a plaintiff must prove that an attorney-client relationship existed which gave rise to a duty and the neglect or breach of that duty by the attorney proximately caused the client's damage. See *Gregory v. Hawkins*, 468 S.E.2d 891, 893 (Va. 1996). In order to prevail on the causation element, a plaintiff must show that the appellate court would have reversed and entered judgment in the plaintiff's favor but for the attorney's error. See *Goldstein v. Kaestner*, 413 S.E.2d 347, 349 (Va. 1992) (holding the appropriate standard of review in a malpractice action where a timely appeal is not filed).[6] Thus, in order for ConMed

---

[5]The parties agree on this. ConMed and Aspen brief, p. 19 and 31, Larson and Taylor brief, p. 32.

[6]The *Goldstein* court determined the standard of review when an attorney failed to file a timely appeal. We are of opinion the same standard

and Aspen to prevail, they must demonstrate that but for Larson & Taylor's alleged negligence, the Federal Circuit would have found in Aspen's favor.

Because the nature of this malpractice action requires that we review the Utah district court's denial of ConMed and Aspen's motion for judgment notwithstanding the verdict assuming the motion had been properly made and review the denial from the perspective of the Federal Circuit, we must first determine the standard under which the Federal Circuit would review the denial of a motion for judgment notwithstanding the verdict.

As we have previously held, "the rules governing appellate review of patent cases are no different than in other types of civil litigation." *Tights, Inc. v. Acme-McCrary Corp.*, 541 F.2d 1047, 1055 (4th Cir. 1976). Thus, in determining whether the motion for judgment notwithstanding the verdict should have been granted, we must evaluate the evidence adduced at trial in the light most favorable to the verdict winner; the court will not attempt either to weigh the evidence or pass on credibility; and the court will not substitute its own judgment for that of the jury. See *Brown v. McGraw-Edison Co.*, 736 F.2d 609, 612-13 (10th Cir. 1984); *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1235 (Fed. Cir. 1989). In the case of patent infringement, a jury's verdict must be upheld if it is supported by substantial evidence; that is, "if there is evidence upon which a reasonable jury could have found infringement." *Ultradent Prods., Inc. v. Life-Like Cosmetics, Inc.*, 127 F.3d 1065, 1070 (Fed. Cir. 1997) (citations omitted).

Federal Circuit precedent provides that in order for an appellant to prevail in such an infringement appeal, as here, the appellant must show that the jury's finding is not supported by substantial evidence or that the jury's finding was made in relation to claim interpretation that cannot be sustained in law. See *Senmed, Inc. v. Richard-Allen*

---

applies to the facts at issue in this case in which Larson & Taylor allegedly failed to preserve review in the Federal Circuit by failing to renew, at the end of all the evidence, a motion for directed verdict which was made at the conclusion of the plaintiff's evidence.

*Med. Indus.*, 888 F.2d 815, 817 (Fed. Cir. 1989).[7] ConMed and Aspen argue that the jury's finding in the Utah district court was made in relation to claim interpretation that cannot be sustained in law and that if Larson & Taylor had properly moved for judgment notwithstanding the verdict, the Federal Circuit would have properly construed these patent claims and reversed the Utah district court. (ConMed and Aspen brief at 2) We disagree.

A.

ConMed and Aspen assert that the district court committed a fundamental error by failing to construe the '807 patent claims as a matter of law prior to concluding that substantial evidence supported the Utah jury's finding of infringement. ConMed and Aspen further contend that Federal Circuit precedent obligates the court to construe the patent claims as a matter of law and that the district court's failure to do so, consistent with their position, as ConMed and Aspen believe the Federal Circuit should have, constitutes reversible error. ConMed and Aspen's argument is based on their belief that when the '807 patent is properly construed, the undisputed evidence shows either that the '807 patent is invalid or that the Aspen blade does not infringe upon the '807 patent.

In asserting that it is the court's duty to construe the patent claim at issue first, ConMed and Aspen rely on the Federal Circuit's decision in *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), affd. 517 U.S. 370 (1996). Indeed, *Markman* mandates that "in a case tried to a jury, the court has the power and obligation to construe as a matter of law the meaning of language used in the patent claim." *Markman*, 52 F.3d at 979. However, at the time the Federal Circuit reviewed the Utah district court's denial of the motion for judgment notwithstanding the verdict in this case, the *Markman* decision had not been decided. Therefore, in order to determine whether the Federal Circuit would have reversed the Utah court's denial of the motion for judgment notwithstanding the verdict had it been made properly, we must first address whether it was appropriate under Federal Circuit law at the time of the appeal for the issue of

---

[7]ConMed and Aspen agree to this, brief p. 50; Larson and Taylor do not disagree, brief p. 44.

patent claim construction to be submitted to the jury. If submitting the issue to the jury was appropriate and substantial evidence exists to support the jury's verdict and claim construction, the jury's verdict must stand.

As the *Markman* decision itself points out, prior to *Markman* "the opinions of . . . [the Federal Circuit] contained some inconsistent statements as to whether and to what extent claim construction is a legal or factual issue, or a mixed issue." *Markman*, 52 F.3d at 976. Although some cases state that claim construction was a matter of law for the court to decide,[8] a number of other cases stated that claim construction may contain underlying issues with relation to facts which must be submitted to a jury under proper instructions. See, e.g., *Tol-O-Matic, Inc. v. Proma Produkt-Und Mktg.*, 945 F.2d 1546, 1552 (Fed. Cir. 1991); *Palumbo v. Don-Joy Co.*, 762 F.2d 969, 974 (Fed. Cir. 1985); *McGill Inc. v. John Zink Co.*, 736 F.2d 666, 671-72 (Fed. Cir. 1984). Regardless of whether *Markman* held that these cases were erroneous in their analysis of the patent claim construction issue, prior to *Markman* they were still good law in the Federal Circuit.

The *McGill*, *Palumbo*, and *Tol-O-Matic* decisions all found that claim construction could contain factual issues which should be resolved by the jury. In the present case, a factual dispute with regard to the patent claim construction is precisely what the district court found existed.[9] Upon reviewing the trial record of the Utah action, the district court found "substantial material fact issues in dispute with the claim construction." Thus, under Federal Circuit case law prior to

---

[8]See e.g. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 822-23 (Fed. Cir. 1992); *Senmed, Inc. v. Richard-Allan Med. Indus.*, 888 F.2d 815, 818-20 (Fed. Cir. 1989); *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 986 (Fed. Cir. 1988) *SSIH Equip. S.A. v. United States Int'l Trade Comm'n*, 718 F.2d 365, 376 (Fed. Cir. 1983).

[9]Specifically, the court found that the jury reviewed several issues pertinent to the patent claim construction that were in dispute and subject to conflicting fact and expert opinion evidence. These issues included whether fluorinated hydrocarbon material completely covered the Aspen Blade, whether the Aspen blade conducted electrical energy through capacitive coupling or ohmic electrical conduction, and what the patent term "about 3 mils" of thickness encompassed.

*Markman,* it was not at all inappropriate for the Utah district court to submit the issue of patent claim construction to the jury under proper instructions. Nor was it inappropriate or inconsistent with applicable law for the Federal Circuit Court of Appeals or the district court in the case at hand to rely on the jury's claim construction of the patent under the instructions of the court and uphold its verdict. As such, we are of opinion that the district court did not err in failing to construe the patent claims favorably to ConMed as a matter of law.

### B.

After reviewing the evidence that the jury received, the district court stated, "this Court cannot find that the jury's verdict was not supported by substantial evidence, or that the jury's finding of the claim interpretation cannot be sustained in law." As a result, the district court decided that even if Larson and Taylor had made a timely Rule 50 motion, the outcome of the appeal would not have been different. Upon our own review of the record, we agree with the district court that the jury received and reviewed conflicting evidence with respect to patent claim construction.

We also agree that the jury's claim interpretation is sustainable in law and that its verdict is supported by substantial evidence. At the time the appeal was taken, Federal Circuit case law allowed for claim construction to be left for the jury in cases where infringement of a patent hinges on the interpretation of the claim. *See Tol-O-Matic v. Proma Produkt-Und Mktg.*, 945 F.2d 1546, 1552 (Fed. Cir. 1991). Thus, because the jury's claim interpretation was sustainable in law and its verdict is supported by substantial evidence, we are of opinion that Larson & Taylor's actions did not cause damage to the ConMed or Aspen.

### C.

We also note that, with respect to ConMed's and Aspen's argument regarding the validity of the '807 patent, Aspen did not appeal the Utah district court's denial of judgment notwithstanding the verdict on the issue of invalidity. As such, the Federal Circuit would not have considered the invalidity issue. The district court, therefore, in the

case at hand, did not have to consider the invalidity issue in its review of the record from the Federal Circuit's perspective.

### III.

In this mixed up case of attempting an hypothetical review of the decisions of a Utah district court and a sister circuit, not even on direct appeal, but by collateral attack on a judgment which has been paid by means of a suit for malpractice, the following facts or conclusions or arguments, however the same may be phrased, in our opinion, also tend to support the judgment of the district court in the case at hand.

First, the success of the plaintiffs in this case depends to a large extent on a favorable construction of Federal Circuit Local Rule 36, which is as follows:

> The court may enter a judgment of affirmance without opinion, citing this rule, when it determines that any of the following circumstances exist:
>
> (a) the judgment, decision or order of the trial court appealed from is based on findings that are not clearly erroneous;
>
> (b) the evidence in support of a jury verdict is sufficient;
>
> (c) summary judgment, directed verdict, or judgment on the pleadings is supported by the record;
>
> (d) the decision of an administrative agency warrants affirmance under the standard of review in the statute authorizing the petition for review; or
>
> (e) a judgment or decision has been entered without an error of law and an opinion would have no precedential value.

It is at once apparent that the judgment of the Federal Circuit might have been based on part (a) of the Rule, or part (b) of the Rule, or part

(e) of the Rule, any or all of them. Instead, to arrive at the result sought to be obtained by ConMed and Aspen, the judgment of the Federal Circuit must have been based on the failure of Larson and Taylor to renew the motion for a directed verdict at the close of all of the evidence, a procedural failure which is not mentioned in Rule 36 but which might have been mentioned in a non-precedential order or opinion otherwise. See *Hamilton v. Brown*, 39 F.3d 1574, 1581 (Fed. Cir. 1994). While we do not decide the basis on which the Federal Circuit based its opinion, the supposition that it was based on the claimed negligence of the attorneys is not proven by the entry of judgment under its Rule 36.

The complaint of ConMed and Aspen is that a proper construction of the claims of the '807 patent at issue in this case would have shown that there was no liability unless on a claim interpretation that cannot be sustained in law under *Senmed*, 888 F.2d at 817. But the claims of the '807 patent were before the jury as well as the court. The jury's application of the facts of the case to the claims of the patent could be only under the instructions of the court, whatever the construction of *Markman* might be. The Utah district court, having received requests for instructions, prepared instructions in writing, apparently 67 in number, and took them up one at a time with the attorneys in some 64 pages of transcript. As the instructions were given to the jury, there were no objections. Of the 67 instructions, only nos. 18, 19, 24, 29, 30, 32 and 33 are included in the record on appeal in this case. The claims of patent '807 are presumed to be valid under 35 U.S.C. § 282. See also *Blonder-Tongue Laboratories, Inc. v. The University of Illinois Foundation, et al.*, 402 U.S. 313, 335 (1971). The instructions included in the record on appeal are set out in the margin.[10]

(Text continued on page 13)

---

[10]

### INSTRUCTION NO. 18

A PATENT IS A PRINTED DOCUMENT WHICH DESCRIBES THE INVENTION. IT HAS: (1) A SPECIFICATION, WHICH IS A WRITTEN DESCRIPTION OF THE INVENTION; (2) DRAWINGS WHICH ILLUSTRATE THE INVENTION; AND (3) NUMBERED CLAIMS. THE SPECIFICATION MUST CONTAIN A "WRITTEN DESCRIPTION OF THE INVENTION, AND THE MANNER AND PROCESS OF USING IT" AND MUST FURTHER SET FORTH THE

DETAILS OF THE INVENTION IN "FULL, CLEAR, CONCISE AND EXACT TERMS AS TO ENABLE ANY PERSON SKILLED IN THE ART" TO MAKE AND USE THE INVENTION.

THE SPECIFICATION CONCLUDES WITH "CLAIMS" WHICH DEFINE IN WRITTEN WORDS WHAT THE PATENT PROTECTS. THE PATENT CLAIMS ARE THE NUMBERED PARAGRAPHS AT THE END OF THE PATENT. THE CLAIMS OF THE PATENT MARK THE BOUNDARIES OF THE INVENTION, LIKE A DEED OR MAP MARKS THE BOUNDARY OF A PIECE OF PROPERTY. THE CLAIMS OF THE PATENT GIVE NOTICE TO OTHERS OF THE INVENTION. THE CLAIMS ARE TO BE READ AND INTER-PRETED IN LIGHT OF THE SPECIFICATION AND THE PROSECU-TION HISTORY OF THE PATENT. THIS MEANS THAT YOU ARE TO DECIDE WHAT A PERSON SKILLED IN THE ART WOULD UNDERSTAND THE SPECIFICATION TO TEACH AS ITS INVEN-TIVE CONTRIBUTIONS, WHAT MEANING THAT PERSON WOULD GIVE TO TERMS AND PHRASES IN THE CLAIMS AND HOW HE WOULD VIEW THE MEANING OF THE CLAIMS AS A WHOLE. WHAT THAT HYPOTHETICAL PERSON KNOWS, UNDERSTANDS OR IS FAMILIAR WITH IN THAT TECHNICAL AREA IS MEASURED AS OF THE TIME THAT THE INVENTION WAS MADE.

### INSTRUCTION NO. 19

THERE ARE TWO WAYS IN WHICH A PATENT CLAIM MAY BE INFRINGED. FIRST, A CLAIM MAY BE "LITERALLY" INFRINGED. SECOND, A CLAIM MAY BE INFRINGED UNDER WHAT IS CALLED THE "DOCTRINE OF EQUIVALENTS." THE BOUNDARIES OF THE PATENT RIGHT ARE DEFINED BY THE CLAIMS OF THE PATENT. EACH CLAIM MUST BE CONSIDERED SEPARATELY SINCE PROOF OF INFRINGEMENT OF ANY ONE CLAIM IS SUFFICIENT TO ESTABLISH INFRINGEMENT OF THE PATENT.

FOR AN ASPEN PRODUCT TO LITERALLY INFRINGE ANY ONE OF THE '807 PATENT CLAIMS, MEGADYNE MUST PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT THE EVERY ELEMENT OF THE SUBJECT MATTER OF THE PATENT CLAIM IS FOUND IN ASPEN'S PRODUCT.

ONLY THE CLAIMS OF A PATENT CAN BE INFRINGED. NEI-

No complaint is made in the brief of ConMed and Aspen about those instructions. We have examined those instructions and, in all events,

(Text continued on page 15)

THER THE SPECIFICATION NOR THE DRAWINGS CAN BE INFRINGED.

### INSTRUCTION NO. 24

CLEAR AND CONVINCING EVIDENCE IS MORE THAN A PREPONDERANCE OF THE EVIDENCE STANDARD. TO MEET THE CLEAR AND CONVINCING STANDARD THE EVIDENCE MUST BE HIGHLY PROBABLE AND FREE FROM SERIOUS DOUBT.

IN ORDER TO BE CLEAR AND CONVINCING EVIDENCE, THE EVIDENCE MUST PRODUCE IN YOUR MINDS A DEFINITE AND FIRM CONVICTION THAT A FACT ALLEGED HAS BEEN ESTABLISHED.

IN DETERMINING WHETHER ANY FACT IN ISSUE HAS BEEN PROVED BY CLEAR AND CONVINCING EVIDENCE, YOU MAY CONSIDER THE TESTIMONY OF ALL THE WITNESSES, REGARDLESS OF WHO MAY HAVE CALLED THEM, AND ALL THE EXHIBITS RECEIVED IN EVIDENCE, REGARDLESS OF WHO MAY HAVE PRODUCED THEM. IF THE PROOF SHOULD FAIL TO ESTABLISH ANY ESSENTIAL ELEMENTS OF A PARTY'S CLAIM BY CLEAR AND CONVINCING EVIDENCE, YOU MUST FIND FOR THE OTHER PARTY AS TO THAT CLAIM.

### INSTRUCTION NO. 29

TO DETERMINE THE MEANING OF THE TERMS OF THE CLAIM, THE SPECIFICATION AND THE FILE (PROSECUTION) HISTORY OF THE PATENT SHOULD BE CONSIDERED. THE SPECIFICATION SHOULD ALWAYS BE CONSIDERED IN CONNECTION WITH THE TERMS USED IN THE CLAIMS. THE CONSTRUCTION YOU GIVE TO THE CLAIMS OF THE PATENT IS NOT LIMITED TO ANY ONE WAY DISCLOSED IN AN EXAMPLE OR THE SPECIFICATION GENERALLY.

THE WORDS IN A PATENT ARE TO BE GIVEN THEIR ORDINARY AND CUSTOMARY MEANING UNLESS IT APPEARS CLEAR THAT THE INVENTOR USED THEM IN SOME DIFFERENT WAY. THE INVENTOR IS PERMITTED TO DEFINE HIS OWN TERMS IN THE SPECIFICATION. IF THE MEANING OF AN EXPRESSION IS MADE REASONABLY CLEAR, AND ITS USE

WITHIN A PATENT SPECIFICATION IS CONSISTENT, THE INVENTOR'S DEFINITION GOVERNS THE TERMS OF THE CLAIMS.

THE "PROSECUTION HISTORY" OF A PATENT CONSISTS OF THE ARGUMENTS AND REPRESENTATIONS MADE BY THE INVENTOR OR HIS LAWYERS IN GETTING THE PATENT OFFICE'S APPROVAL OF THE PATENT, INCLUDING THE INVENTOR'S AMENDMENTS TO THE PATENT CLAIMS DURING THE PROSECUTION PROCESS.

### INSTRUCTION NO. 30

CLAIM LANGUAGE SHOULD BE INTERPRETED AS IT WOULD BE INTERPRETED BY PERSONS SKILLED IN THE ART. EXPERT TESTIMONY MAY BE CONSIDERED BY YOU TO DECIDE HOW THE CLAIM LANGUAGE WOULD BE UNDERSTOOD BY PERSONS SKILLED IN THE ART.

IF YOU FIND THAT THE INVENTOR DEFINED A WORD OR TERM IN THE PATENT SPECIFICATION, THEN YOU ALSO MUST ACCEPT THAT DEFINITION. BUT IF NO PARTICULAR OR SPECIAL MEANING OF THE WORD OR TERM IS FOUND IN THE PATENT SPECIFICATION, THEN YOU SHOULD UNDERSTAND AND GIVE TO THAT WORD OR TERM ITS ORDINARY AND ACCUSTOMED MEANING.

ONCE YOU HAVE INTERPRETED A CLAIM IN ONE WAY TO DETERMINE IF THAT CLAIM HAS BEEN INFRINGED, YOU MUST INTERPRET THE CLAIM IN EXACTLY THE SAME WAY TO DETERMINE WHETHER THE CLAIM IS VALID OR INVALID.

### INSTRUCTION NO. 32

YOU MAY FIND AN ASPEN PRODUCT INFRINGES ONE OR MORE OF MEGADYNE'S CLAIMS IF THE PRODUCT TRACKS THE LANGUAGE OF THE CLAIMS OR YOU MAY FIND INFRINGEMENT IF MEGADYNE PROVES BY A PREPONDERANCE OF THE EVIDENCE THAT AN ASPEN PRODUCT PERFORMS SUBSTANTIALLY THE SAME FUNCTION, IN SUBSTANTIALLY THE SAME WAY, TO PRODUCE SUBSTANTIALLY THE SAME RESULT AS THE DEVICE IN THE PATENT CLAIM. THIS IS CALLED "THE DOCTRINE OF EQUIVALENCY" AND INCLUDES ANY ELEMENT WHICH ONE OF ORDINARY

are of opinion they do not relate to a claim interpretation that cannot be sustained in law under *Senmed*.

The other matter coming to the attention of the jury which might have contained a claim interpretation that cannot be sustained in law was the form of special verdict, which is also set out in the margin.[11]

(Text continued on page 17)

---

SKILL IN THE ART WOULD PERCEIVE AS SUBSTANTIALLY INTERCHANGEABLE WITH THE CLAIMED ELEMENT.

WHETHER ASPEN'S PRODUCTS ARE EQUIVALENT TO THE INVENTION IN ONE OF THE '807 PATENT CLAIMS IS A FACTUAL MATTER FOR YOU TO DECIDE BASED ON A PREPONDERANCE OF THE EVIDENCE, AND IS TO BE DETERMINED AFTER YOU CONSIDER THE CLAIMS OF THE PATENT IN VIEW OF THE WRITTEN DESCRIPTION, THE PRIOR ART, THE PROSECUTION HISTORY AND THE PARTICULAR CIRCUMSTANCES OF THIS CASE.

### INSTRUCTION NO. 33

UNDER THE DOCTRINE OF EQUIVALENTS YOU SHOULD CONSIDER THE APPLICABILITY OF PROSECUTION HISTORY. THE HISTORY OF PROSECUTION OF A PATENT APPLICATION CAN BE USED TO EXPLAIN THE MEANING OF THE WORDS USED IN THE CLAIMS.

UNDER THE DOCTRINE OF EQUIVALENTS, A PATENTEE IS PREVENTED FROM TAKING POSITIONS CONCERNING ITS CLAIMS THAT ARE INCONSISTENT WITH POSITIONS THAT THE PATENTEE TOOK IN PRESENTING THE CLAIMS TO THE PATENT OFFICE IN ITS EFFORTS TO GET A PATENT. THE DOCTRINE OF EQUIVALENTS MAY NOT BE USED TO EMBRACE SUBJECT MATTER ALREADY DISCLOSED BY THE PRIOR ART.

[11]

MEGADYNE MEDICAL PRODUCTS, INC., a Utah corporation,

     Plaintiff,

  vs.

**SPECIAL VERDICT**

Civil No. 91-C-852 J

ASPEN LABORATORIES, INC., a
Colorado corporation, et al.,                Judge Bruce S. Jenkins

      Defendants.

WE, THE JURY, UNANIMOUSLY FIND AS FOLLOWS:

1.   Considering each claim separately, has MegaDyne proven by a preponderance of the evidence that Aspen has literally infringed claim 1, 2 or 5 of the '807 patent?

          Claim 1 Yes __X__    No _____
          Claim 2 Yes __X__    No _____
          Claim 5 Yes __X__    No _____

2.   Considering each claim separately, has MegaDyne proven by a preponderance of the evidence that an Aspen product performs substantially the same function in substantially the same manner, to produce substantially the same result as the invention described in claim 1, 2, or 5 of the '807 patent?

          Claim 1 Yes __X__    No _____
          Claim 2 Yes __X__    No _____
          Claim 5 Yes __X__    No _____

If you answered "Yes" to any subpart of question 1 or 2, answer the next question. If your answer to question 1 or 2 was "No" as to all subparts, do not answer the next question. Instead move ahead to question 4.

3.   Has Megadyne proven by clear and convincing evidence that Aspen's infringement of the '807 patent was willful?

          Yes __X__   No _____

4.   Considering each claim separately, has Aspen proven by clear and convincing evidence that a single prior art patent, publication or device contained all of the elements, arranged in exactly the same way as they are in claim 1, 2 or 5, thereby anticipating the '807 patent?

          Claim 1 Yes _____    No __X__
          Claim 2 Yes _____    No __X__
          Claim 5 Yes _____    No __X__

5.   Considering each claim separately, has Aspen proven by clear and convincing evidence that the differences between the subject matter of the claimed inventions in claim 1, 2 or 5 of the '807 patent and the prior

It was not objected to. We have examined that verdict and find nothing in it relating to a claim interpretation that cannot be sustained in law.

---

art are such that the subject matter as whole would have been obvious at the time the invention was made to persons having ordinary skill in the pertinent art?

Claim 1 Yes _____    No __X__
Claim 2 Yes _____    No __X__
Claim 5 Yes _____    No __X__

6.    Considering each claim separately, has Aspen proven by clear and convincing evidence that claims 1, 2 or 5 of the '807 patent fails to particularly point out or to distinctly claim the subject matter of the invention?

Claim 1 Yes _____    No __X__
Claim 2 Yes _____    No __X__
Claim 5 Yes _____    No __X__

7.    Has Aspen proven by clear and convincing evidence that the inventor, Dr. Blanch, failed to disclose the best mode known by the inventor for carrying out his claimed invention at the time the application was filed?

Yes _____    No __X__

8.    Has Aspen proven by clear and convincing evidence that Dr. Blanch, one of Megadyne's managers, attorneys, or any other persons participating in preparation or prosecution of the '807 patent, with intent to deceive, failed to disclose any information that he knew was material to the patent application to the Patent Office.

Yes _____    No __X__

9.    Has Aspen proven by clear and convincing evidence that Dr. Blanch, one of Megadyne's managers, attorneys, or any other persons participating in preparation or prosecution of the '807 patent, with intent to deceive, submitted false or misleading information that he knew was material to the patent application to the Patent Office.

Yes _____    No __X__

10.    Has Aspen proven by clear and convincing evidence that new matter was introduced into claims 1, 2 and 5 of the '807 patent by an amendment submitted to the Patent Office in June of 1988?

Yes _____    No __X__

We also add that, whatever the extent of the rule of the *Markman* case, we are of opinion that the record in this case does not show a violation thereof.

### IV.

On cross appeal, Larson and Taylor argue that ConMed's legal malpractice claims are barred by the Virginia statute of limitations. We will not consider this argument because we have affirmed the district court's decision on the grounds stated in the body of this opinion.

The judgment of the district court is accordingly

*AFFIRMED*.

---

You need answer the following question ONLY if you answered "Yes" to either question 1 or 2 and "No" to questions 4 through 10.

11.    What do you find by a preponderance of the evidence to be a reasonable royalty to be charged Aspen per blade produced and sold? (The parties agree that Aspen has produced and sold 489,038 blades as of September 1, 1993.)

$   1.92   

DATED THIS 13th day of October, 1993.

           /s/        [signature]           
                Presiding Officer