## DUVALL, BLACKBURN, HALE & DOWNEY

### V.

## ROSE MARIE SIDDIQUI

Record No. 910956

April 17, 1992

Present: All the Justices

*Suzanne R. Beck (Robert L. Ellis; Siciliano, Ellis, Dyer & Boccarosse*, on brief), for appellant.

*Ky E. Kirby (Swidler & Berlin*, on brief), for appellee.

JUSTICE KEENAN delivered the opinion of the Court.

The sole issue in this legal malpractice case is whether the client proved the proper measure of damages resulting from her attorney's misrepresentation that a support order had been entered by the court.

In May 1985, Rose Marie Siddiqui (wife) retained the law firm of Duvall, Blackburn, Hale & Downey (Duvall) to represent her in obtaining a divorce, as well as spousal and child support, from her husband, Feroz Rashid Siddiqui (husband). Duvall assigned attorney Dana James Carlson to handle the wife's case.

On June 6, 1985, prior to a scheduled *pendente lite* support hearing, the parties presented a drafted and signed separation agreement to their respective attorneys. This agreement included the following provision regarding support: "I [husband] will help to maintain support for her [wife] and the children and our home while she has also agreed to obtain a job to help cover our expenses." Carlson informed the wife that this agreement would be

difficult to enforce, and stated that he would draft a consent order for support that would be enforceable. Carlson later sent the wife an unsigned copy of the consent order which he had drafted. On several occasions, he told the wife that the drafted consent order had been entered by the court, although, in fact, no such order had been entered.[1]

The husband did not provide the support required by the drafted consent order. Accordingly, believing that the drafted consent order had been entered, the wife, acting *pro se*, initiated an action in the juvenile and domestic relations district court to enforce it. During this proceeding, the wife presented evidence of the amount of support that the husband had failed to pay. Since the court could find no consent order in the case file, it used a copy of the drafted consent order provided by the wife. The court then awarded the wife $17,579.62 in spousal and child support arrearages. The husband appealed.

On appeal, the circuit court was unable to find any indication that a consent order had been entered. Therefore, it remanded the case to the juvenile and domestic relations district court for an explanation of the basis of the award. No action on the order of remand was taken by that court. Acting *pro se*, the wife subsequently obtained a divorce and negotiated a property settlement agreement with the husband which contained new support provisions. Those provisions took effect on May 1, 1987.

In 1988, Duvall filed a Warrant in Debt against the wife for $1,342.86 in unpaid legal fees. The wife, acting *pro se*, filed an answer and counterclaim against Duvall for legal malpractice and removed the case to the circuit court. The wife claimed that, as a result of Duvall's failure to obtain a court order requiring the husband to pay spousal and child support, she incurred damages in the amount of $87,579.62.

Duvall dismissed its claim against the wife for legal fees and the trial proceeded on the malpractice claim only. The wife presented evidence of her damages through her own testimony and that of an economist, William Gradowitz. The wife testified that the husband supported the family prior to leaving the marital home in 1985. She further testified that, after their separation, the

---

[1] The drafted consent order required the husband to "make all house payments and expenses of utilities and upkeep associated with the parties' marital resident [sic]; and, further, to provide the [wife] and the parties' minor children with the necessities of food, clothing, auto expenses, and hygienic materials, all of which shall be provided *in kind*."

husband agreed to provide support for her and the children by paying certain bills directly and by providing needed items.

Gradowitz testified that, after deducting the amount of support actually provided by the husband, the living expenses for the wife and children amounted to $42,000 between June 1, 1985 and May 1, 1987. Gradowitz further testified that the figure of $42,000 should be increased to $57,000 to account for the wife's lost opportunity cost for use of the money.

Duvall moved to strike the wife's evidence stating that she failed adequately to prove her damages. The trial court denied the motion. Duvall presented the testimony of Carlson that the husband never agreed to sign the drafted consent order and that Carlson had advised the wife of this fact. At the close of its evidence, Duvall renewed its motion to strike and the trial court took the motion under advisement. The jury returned a verdict in favor of the wife in the amount of $55,000. The trial court subsequently denied Duvall's motion to strike, stating that "[t]he issue at stake here is not liability. . . . The main thrust of [Duvall's] motion to strike is that the [wife] employed an improper measure of damages. . . . I disagree. . . . The 'yield' of the consent order is what she lost; this then becomes the measure of her damages." This appeal followed.

Damages resulting from the negligence of an attorney are not presumed. Rather, the client has the burden of proving that the damages claimed were proximately caused by the attorney's negligence. *Allied Productions* v. *Duesterdick*, 217 Va. 763, 764-65, 232 S.E.2d 774, 775 (1977). An attorney is liable only for actual injury to his client and damages will be calculated on the basis of the value of what is lost by the client. *See id.* While the client is not required to prove the exact amount of incurred damages, the client is required to show facts and circumstances from which the trier of fact can make a reasonably certain estimate of those damages. *Goldstein* v. *Kaestner*, 243 Va. 169, 173, 413 S.E.2d 347, 349-50 (1992).

Duvall asserts that the wife failed to prove that she was damaged in the amount of support provided in the drafted consent order, because the husband never agreed to sign it. Thus, Duvall argues that, even if Carlson did misrepresent that the drafted consent order had been entered, this misrepresentation was not the proximate cause of the wife's failure to receive support as set forth in the order. Based on this argument, Duvall contends that the

proper measure of damages is the amount that the wife could have obtained had she sought *pendente lite* relief over this two-year period. We disagree.

■ As recognized by other jurisdictions, there is no single formula for measuring damages in attorney malpractice cases. In large part, the appropriate measure of damages must be determined by the facts and circumstances of each case. *Jennings* v. *Lake*, 267 S.C. 677, 680, 230 S.E.2d 903, 904 (1976); *see Keister* v. *Talbott*, 391 S.E.2d 895, 899 (W.Va. 1990).

■ The measure of damages set by the trial court in the case before us was approved by this Court in the similar context of a case involving breach of a fiduciary duty to explain. In *Long & Foster Real Estate* v. *Clay*, 231 Va. 170, 343 S.E.2d 297 (1986), a real estate agent had urged her client, the property owner, to enter into a contract of sale which required the owner to take back a deed of trust on the property. The contract provided that the deed of trust was to be subordinate to a deed of trust securing a construction loan on the property, despite the owner's statement to the agent that she would not accept a contract containing a second trust on the property.

■ We held that the proper measure of damages, for the agent's breach of her fiduciary duty to explain the terms of the contract to her client, was the difference between the value of the note the property owner bargained for and the value of the note which she actually received. *Id.* at 176, 343 S.E.2d at 301. Similarly, in the case before us, we hold that the proper measure of the wife's damages, as allowed by the trial court, was the difference between what she bargained for, *viz.*, the value of the support provided in the consent order, and the value of what she actually received. *See id.*; *Jennings*, 267 S.C. at 680, 230 S.E.2d at 905.

We reject Duvall's contention that the evidence is insufficient to support this measure of damages. The evidence is unrefuted that the drafted consent order was written by Carlson as a substitute for and to formalize the separation agreement actually signed by the parties. In the drafted consent order, the husband's duties to pay "in kind" support were specified in detail. Carlson himself testified that the provisions of the drafted consent order gave the wife more support than she could have expected under a *pendente lite* award.

■ Although there was no testimony that the husband agreed to the exact language contained in the support provisions of the

drafted consent order, the wife testified that Carlson told her that those provisions were based on the parties' executed separation agreement. The wife further testified that immediately prior to the scheduled *pendente lite* hearing, the husband affirmed his willingness to provide for the family's needs as reflected in the parties' separation agreement. Finally, as stated above, Gradowitz testified that the dollar value of the support that the wife lost was $57,000. Finding that this evidence is sufficient to support the measure of damages, we will affirm the judgment of the trial court.[2]

*Affirmed.*

---

[2] Since Duvall did not assign error to the sufficiency of the evidence of its liability, we do not consider that argument raised in its brief. We also reject Duvall's argument that the standard of review set forth in *Goldstein* v. *Kaestner*, 243 Va. at 172, 413 S.E.2d at 347, applies to this case. In *Goldstein*, we set forth a standard for reviewing an attorney's liability to pay damages for malpractice, whereas, in the present case, we determine whether the measure of damages was proper.