Present:  Lemons, C.J, Goodwyn, Millette, McClanahan, and
Powell, JJ., and Russell and Lacy, S.JJ.

SHEVLIN SMITH
                                        OPINION BY
v.   Record No. 140500        JUSTICE LEROY F. MILLETTE, JR.
                                        February 26, 2015
BRUCE W. McLAUGHLIN


               FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                        Michael F. Devine, Judge

     In this appeal we consider, among other issues,

(1) whether an attorney breaches the duty to a client by

failing to correctly anticipate a judicial ruling on an

unsettled legal issue, (2) whether collectibility is relevant

to a legal malpractice claim when the alleged injury is the

loss of an otherwise viable claim, and (3) whether non-

pecuniary damages are recoverable in a legal malpractice claim.

                  I.   Facts And Proceedings

     This appeal arises from a legal malpractice claim.

Typically, a legal malpractice claim involves a case within the

case, because the legal malpractice plaintiff must establish

how the attorney's negligence in the underlying litigation

proximately caused the legal malpractice plaintiff's damages.

This appeal presents an additional level to this typical

format, as the underlying litigation in which the alleged

malpractice occurred was itself a legal malpractice claim.

This legal malpractice claim therefore implicates a case (the

initial criminal matter) within a case (the criminal malpractice matter) within the case (the legal malpractice matter that is now before us).

A.   The Criminal Matter

In 1998, Bruce McLaughlin was charged on multiple counts of felony sexual abuse.  McLaughlin hired William J. Schewe of the firm Graham & Schewe, and Harvey J. Volzer of the firm Shaughnessy, Volzer & Gagner, P.C. to represent him in this criminal matter.  At the conclusion of trial, the jury found McLaughlin guilty and convicted him of nine counts of sexual abuse of three of his children, and McLaughlin was sentenced to serve 13 years in prison.

McLaughlin's direct appeal was denied.  A few hours after learning of this denial, McLaughlin was brought to the Loudoun County General District Court on an unrelated matter.  At that time McLaughlin attempted to escape from custody by running from the courthouse, but was quickly apprehended.  McLaughlin pled guilty to the class six felony of simple escape and was sentenced to five years in prison with two and one half years suspended.

Pursuant to habeas proceedings, McLaughlin's convictions for the felony sexual abuse charges were vacated and he was granted a new trial.  A second trial on the felony sexual abuse charges was held in 2002, and at the conclusion of trial the

2

jury found McLaughlin not guilty on all charges.  McLaughlin had been incarcerated for over four years, from September 1998 until his release in December 2002.

B.    The Criminal Malpractice Matter

McLaughlin sought to bring a legal malpractice claim against his criminal defense attorneys Schewe, Volzer, and their respective law firms (the "criminal malpractice claim"). McLaughlin hired the firm Shevlin Smith to pursue that criminal malpractice claim, with Brian Shevlin as lead counsel.  The criminal malpractice claim alleged that McLaughlin's criminal defense attorneys negligently failed to obtain the taped interviews of the alleged victims and compare those tapes with the inaccurate written transcripts used during McLaughlin's first criminal trial.

Volzer and the firm Shaughnessy, Volzer & Gagner, P.C. had $2,000,000 in insurance coverage for any liability arising from the criminal malpractice claim.  The malpractice insurer for Schewe and the firm Graham & Schewe had obtained a judicial ruling that it was not required to provide coverage for the criminal malpractice claim.  Nevertheless, the insurer provided $50,000 to Schewe and the firm Graham & Schewe to handle the criminal malpractice matter or settle the case.

As McLaughlin needed money and wanted to accept the settlement offer, Shevlin Smith negotiated a settlement and

release with Schewe and the firm Graham & Schewe in order to settle McLaughlin's criminal malpractice claim against them (the "Release Agreement"). This Release Agreement was executed in 2005, and specifically settled McLaughlin's criminal malpractice claim against Schewe, John T. Graham, and the firm Graham & Schewe for $50,000. The Release Agreement expressly did not discharge McLaughlin's criminal malpractice claim against Volzer and the firm Shaughnessy, Volzer & Gagner, P.C., and was entered into pursuant to Code § 8.01-35.1.

Approximately four months after Shevlin Smith executed the Release Agreement, this Court issued its opinion in Cox v. Geary, 271 Va. 141, 624 S.E.2d 16 (2006). Based on one of the holdings in that case, Volzer and the firm Shaughnessy, Volzer & Gagner, P.C. filed a plea in bar to McLaughlin's criminal malpractice claim. Volzer and the firm argued that McLaughlin's criminal malpractice claim against them must be dismissed because, under the rationale of Cox, the settlement and release of some co-defendants to the legal malpractice claim by way of the Release Agreement was a release of all co-defendants. The trial court agreed, sustained Volzer's and the firm's plea in bar, and dismissed McLaughlin's complaint against those parties. This Court, by unpublished order, affirmed the circuit court's judgment.

4

C.    The Legal Malpractice Matter

Unable to pursue his criminal malpractice claim, McLaughlin filed a legal malpractice suit against Shevlin Smith. McLaughlin's complaint alleged 13 discrete failures of Shevlin Smith's legal representation in the criminal malpractice matter, each constituting a different theory of how Shevlin Smith breached its duty to McLaughlin. These theories can be grouped into two categories. First, that Shevlin Smith breached its duty to McLaughlin by failing to foresee how this Court's holding in Cox would impact the Release Agreement. Second, that Shevlin Smith breached its duty to McLaughlin by failing to take various actions with respect to Graham, Schewe, and the firm Graham & Schewe, and failing to fully advise McLaughlin about the alternative of refusing the settlement and continuing to proceed against Graham, Schewe, and the firm Graham & Schewe.

McLaughlin's case eventually went to trial. At trial, a legal malpractice plaintiff is required to prove how the defendant attorney committed malpractice in the underlying proceeding. Whitley v. Chamouris, 265 Va. 9, 11, 574 S.E.2d 251, 252-53 (2003). Additionally, if the alleged negligence occurred in a criminal proceeding, the legal malpractice plaintiff must prove post-conviction relief and innocence entitling him to release. Taylor v. Davis, 265 Va. 187, 191,

5

576 S.E.2d 445, 447 (2003); Adkins v. Dixon, 253 Va. 275, 281–82, 482 S.E.2d 797, 801-02 (1997).  Pursuant to these principles, after hearing testimony and considering the evidence, the jury found Shevlin Smith liable to McLaughlin and awarded judgment in the amount of $5.75 million.  Shevlin Smith timely filed a petition for appeal with this Court.  We granted Shevlin Smith's eight assignments of error and McLaughlin's seven assignments of cross-error.

## II.  Discussion

A. Whether The Circuit Court Erred In Failing To Sustain Shevlin Smith's Second Plea In Bar

Assignment of error 8 reads:

The circuit court erred in [failing to sustain Shevlin Smith]'s second plea in bar, and by rejecting Shevlin Smith's position that an attorney does not commit malpractice, as a matter of law, by failing to anticipate a change or shift in the law or by exercising judgment on an unsettled point.

1. Standard Of Review

We apply a de novo standard of review when "[t]here are no disputed facts relevant to the plea in bar and it presents a pure question of law."  David White Crane Serv. v. Howell, 282 Va. 323, 327, 714 S.E.2d 572, 575 (2011).

2. The Circuit Court's Refusal To Sustain The Plea In Bar Was In Error

Shevlin Smith's second plea in bar argued that McLaughlin was barred from recovering on his legal malpractice claim

6

because, as a matter of law, Shevlin Smith "did not breach the prevailing standard of care and [its] actions are protected by the judgmental immunity doctrine."  McLaughlin countered that the issue of Shevlin Smith's alleged breach was not one of law, but one of fact, and therefore to be determined by a fact finder.  The circuit court denied Shevlin Smith's plea in bar on two bases.  Neither basis justified the court's action.

### a.   A Plea In Bar Can Be Sustained Even If It Only Presents A Partial Bar To The Plaintiff's Recovery

The circuit court first reasoned that it could not sustain the plea in bar because, even if Shevlin Smith was not negligent by failing to correctly anticipate a judicial ruling on an unsettled legal issue, such a conclusion would not resolve all issues in the case because McLaughlin had alleged additional theories of breach.  This was error.

"A plea in bar asserts a single issue [of fact], which, if proved, creates a bar to a plaintiff's recovery."  Hawthorne v. VanMarter, 279 Va. 566, 577, 692 S.E.2d 226, 233 (2010). Usually, as a plea in bar "reduce[s] litigation to a distinct issue of fact," the issue of fact asserted by the plea in bar is dispositive as to the entire suit.  Schmidt v. Household Fin. Corp., II, 276 Va. 108, 116, 661 S.E.2d 834, 838 (2008) (internal quotation marks, alterations, and citation omitted); see also, e.g., Ferguson v. Stokes, 287 Va. 446, 450-52, 756

7

S.E.2d 455, 457-58 (2014) (statute of limitations); <u>Weichert Co. of Virginia v. First Commercial Bank</u>, 246 Va. 108, 109, 431 S.E.2d 308, 308 (1993) (standing).

Although pleas in bar typically present a complete bar to the plaintiff's recovery, we have recognized that a plea in bar "constitutes [either] a complete defense to the [complaint], <u>or to that part of the [complaint] to which it is pleaded</u>." <u>Campbell v. Johnson</u>, 203 Va. 43, 47, 122 S.E.2d 907, 910 (1961) (emphasis added) (internal quotation marks and citation omitted). That is, a plea in bar can be sustained even if it presents a bar to recovery to only some, but not all, of the plaintiff's claims. <u>Cf.</u> <u>Reynolds v. Cook</u>, 83 Va. 817, 825, 3 S.E. 710, 715 (1887) (recognizing that a statute permitted a plea in bar to an ejectment action "in whole or in part").

Shevlin Smith's plea in bar presented an issue of fact that constituted a potential bar to some, but not all, of McLaughlin's theories of how Shevlin Smith committed malpractice – specifically, the theory that the inadvertent release of Volzer and the firm Shaughnessy, Volzer & Gagner, P.C. was negligent. Accordingly, the circuit court had the ability to rule that, to the extent the issue of fact prevented McLaughlin from pursuing certain theories of Shevlin Smith's breach, the plea in bar presented a partial bar to McLaughlin's recovery.

8

### b.    Acting In An Unsettled Area Of The Law

The second reason cited by the circuit court in denying Shevlin Smith's second plea in bar was that it could not rule as a matter of law on the issue, because whether Shevlin Smith breached its duty to McLaughlin was a question of fact to be decided by a jury.  This, too, was error.

"A cause of action for legal malpractice requires the existence of an attorney-client relationship which gave rise to a duty, breach of that duty by the defendant attorney, and that the damages claimed by the plaintiff client must have been proximately caused by the defendant attorney's breach." Shipman v. Kruck, 267 Va. 495, 501, 593 S.E.2d 319, 322 (2004) (internal quotation marks and citation omitted).  To establish an attorney's breach of duty, "a client must show that the attorney failed to exercise a reasonable degree of care, skill, and dispatch in rendering the services for which the attorney was employed."  Ripper v. Bain, 253 Va. 197, 202-03, 482 S.E.2d 832, 835-36 (1997).  This generally is a question of fact "to be decided by a fact finder, after considering testimony of expert witnesses," but must be "reserved for determination by a court and cannot be the subject of expert testimony" if the issue of a breach is a matter of law.  Heyward & Lee Constr. Co. v. Sands, Anderson, Marks & Miller, 249 Va. 54, 57, 453 S.E.2d 270, 272 (1995).

We have previously held that, as a matter of law, an attorney does not breach his duty to a client when that attorney follows "well-established law" that is reversed by an appellate court subsequent to the attorney's action. Id. at 59-60, 453 S.E.2d at 273. This appeal requires us to decide the related issue of whether Shevlin Smith breached its duty to McLaughlin by failing to correctly anticipate a judicial ruling on an unsettled legal issue.[1] Shevlin Smith cites decisions of courts in other jurisdictions that, when faced with this issue, have applied what is sometimes termed the "judgmental immunity rule."[2] See Sun Valley Potatoes, Inc. v. Rosholt, Robertson & Tucker, Chtd., 981 P.2d 236, 239-40 & n.1 (Idaho 1999) (collecting cases); Nelson v. Quarles & Brady, LLP, 997 N.E.2d 872, 882-83 & n.3 (Ill. App. Ct. 2013) (collecting cases). The judgmental immunity concept purports to establish a clear principle, that is, as a matter of law an attorney cannot be liable "when [the attorney's] opinions are based on speculation into an unsettled area of the law." Roberts v. Chimileski, 820 A.2d 995, 998 (Vt. 2003).

---

[1] In his complaint, McLaughlin did not precisely frame his theory of breach in this manner. But it is clear that several of the alleged failures in Shevlin Smith's legal representation amount to the claim that Shevlin Smith's breach was a failure to foresee our decision in Cox as it applied to Code § 8.01-35.1 and legal malpractice claims.

[2] This principle is also referred to as an "attorney judgment rule." See, e.g., Lifestar Response of Ala., Inc. v. Admiral Ins. Co., 17 So.3d 200, 211 (Ala. 2009).

Whether the principle actually operates to provide a blanket rule of immunity has been questioned by some courts. See Sun Valley Potatoes, 981 P.2d at 240. Other courts have been more critical, inquiring whether the judgmental immunity concept establishes a new substantive rule, and thereby "sanction[s] some conduct that would otherwise be negligent," or instead simply restates the standard of care and is thus "nothing more than a tautology." Harris Teeter, Inc. v. Moore & Van Allen, PLLC, 701 S.E.2d 742, 756 (S.C. 2010) (Hearn, J., concurring in part and dissenting in part).

We decline to adopt a per se judgmental immunity doctrine because it would not provide the clarity or utility it promises. Nonetheless, the concerns animating such a rule are present in the circumstances of this case. See Davis v. Damrell, 174 Cal. Rptr. 257, 260-61 (Cal. Ct. App. 1981) ("[T]he failure [of an attorney] to anticipate correctly the resolution of an unsettled legal principle does not constitute culpable conduct[ because] the exercise of sound professional judgment rests upon considerations of legal perception and not prescience."). Allowing an attorney to be liable in malpractice for simply failing to correctly predict the outcome of an unsettled legal issue unduly burdens the practice of law, which does a disservice to the profession, and hampers the development of the law, which does a disservice to the public.

11

Other courts, even when declining to adopt a "rule" of judgmental immunity, have recognized under traditional standard of care principles that an attorney's reasonable but imperfect judgment regarding an unsettled legal issue does not give rise to liability.  See, e.g., McIntire v. Lee, 816 A.2d 993, 1000 (N.H. 2003); Clark Cnty. Fire Dist. No. 5 v. Bullivant Houser Bailey PC, 324 P.3d 743, 750-51 (Wash. Ct. App. 2014); see also McMann v. Richardson, 397 U.S. 759, 771 (1970) ("[U]ncertainty is inherent in predicting court decisions.").  We, too, recognize such a principle and hold that, if an attorney exercises a "reasonable degree of care, skill, and dispatch" while acting in an unsettled area of the law, which is to be evaluated in the context of "the state of the law at the time" of the alleged negligence, then the attorney does not breach the duty owed to the client.  Ripper, 253 Va. at 202-03, 482 S.E.2d at 835-36; Heyward & Lee, 249 Va. at 57, 453 S.E.2d at 272.  And while this determination is ordinarily a question of fact for a jury, it becomes an issue of law when "reasonable minds could not differ" on the issue.  Poliquin v. Daniels, 254 Va. 51, 57, 486 S.E.2d 530, 534 (1997); see also Heyward & Lee, 249 Va. at 57, 453 S.E.2d at 272.

Under these principles, as a matter of law, Shevlin Smith did not breach its duty by failing to correctly anticipate a judicial ruling on an unsettled legal issue.  Before Shevlin

12

Smith executed the Release Agreement, the common law held that "where there is one indivisible injury, for which settlement has been consummated, unconditional release of [a co-defendant] allegedly liable for the injury bars recovery against [other co-defendants] also allegedly liable, regardless of the theory upon which liability is predicated."  Cauthorn v. British Leyland, U.K., Ltd., 233 Va. 202, 207, 355 S.E.2d 306, 309 (1987).  At the time the Release Agreement was executed in 2005, the General Assembly had modified this common law rule in Code § 8.01-35.1 with respect to "tort-feasors," so that settlement with and release of one co-tortfeasor did not release other co-tortfeasors.[3]  See former Code § 8.01-35.1 (2000 Repl. Vol.); Hayman v. Patio Products, Inc., 226 Va. 482, 485-88, 311 S.E.2d 752, 755-56 (1984).

Shevlin Smith executed the Release Agreement, believing that it had released some but not all of the co-defendants to McLaughlin's criminal malpractice claim by operation of Code § 8.01-35.1, under the theory that legal malpractice defendants are "tort-feasors" as that term was used in Code § 8.01-35.1. Approximately four months following entry of the Release Agreement, however, this Court issued its opinion in Cox v. Geary, 271 Va. 141, 624 S.E.2d 16 (2006).  We held that Code

---

[3] The General Assembly amended Code § 8.01-35.1 in 2007. 2007 Acts ch. 443.  Code § 8.01-35.1 now applies to "persons liable for the same injury to a person or property."

13

§ 8.01-35.1 did not apply to legal malpractice claims because "although legal malpractice [claims] sound in tort, it is the contract that gives rise to the duty," and thus a legal malpractice defendant is not a tortfeasor as "[t]he cause of action . . . is one for breach of contract." Id. at 152-53, 624 S.E.2d at 22-23 (internal quotation marks omitted).

At the time that the Release Agreement was executed, no appellate court had addressed the issue of whether Code § 8.01-35.1 governed legal malpractice claims. Thus, Shevlin Smith was acting in an unsettled area of the law. But at that time two lines of jurisprudence provided Shevlin Smith the necessary basis to have executed the Release Agreement in accordance with the "reasonable degree of care, skill, and dispatch" required of an attorney operating in an unsettled area of the law. Ripper, 253 Va. at 202-03, 482 S.E.2d at 835-36.

First, this Court had repeatedly stated that a legal malpractice claim had strong tort law connotations, so that a legal malpractice claim appeared to be a type of hybrid claim straddling the line between tort and contract. See, e.g., MacLellan v. Throckmorton, 235 Va. 341, 343, 367 S.E.2d 720, 721 (1988); Oleyar v. Kerr, 217 Va. 88, 90, 225 S.E.2d 398, 400 (1976). Although a legal malpractice claim is predicated upon breach of the duty created by the attorney-client contract, Oleyar, 217 Va. at 90, 225 S.E.2d at 399-400, this Court had

14

favorably referenced a client's ability to bring a legal malpractice claim as either a tort or contract claim. See, e.g., MacLellan, 235 Va. at 343, 367 S.E.2d at 721; Goodstein v. Weinberg, 219 Va. 105, 110, 245 S.E.2d 140, 143 (1978). And this Court had described the substantive law applicable to legal malpractice claims in tort terminology, thus suggesting that a legal malpractice defendant was a type of tortfeasor. See, e.g., Lyle, Siegel, Croshaw & Beale, P.C. v. Tidewater Capital Corp., 249 Va. 426, 432, 457 S.E.2d 28, 32 (1995); Campbell v. Bettius, 244 Va. 347, 352, 421 S.E.2d 433, 436 (1992); Spence v. Norfolk & W. R.R. Co., 92 Va. 102, 113, 22 S.E. 815, 817 (1895) (quoting Boorman v. Brown, (1842) 114 Eng. Rep. 603 (Exch.) 608; 3 Q.B. 511, 525-26, later proceeding sub nom. Brown v. Boorman, (1844) 8 Eng. Rep. 1003 (H.L.) 1007; 11 Cl. & Fin. 1, 11-12).

Second, this Court had previously read Code § 8.01-35.1 broadly in conformity with the statute's purpose to "facilitate[] prompt settlement, payment, and discharge of paying [tortfeasors] without releasing those non-paying joint [tortfeasors] who prefer to have their liability determined in litigation, with its attendant delays." Hayman, 226 Va. at 487, 311 S.E.2d at 756; see also, e.g., Tazewell Oil Co. v. United Virginia Bank/Crestar Bank, 243 Va. 94, 106, 413 S.E.2d 611, 617 (1992). Additionally, we held that "the application

15

of Code § 8.01-35.1 is not limited to 'joint tort-feasors,' as that term is narrowly defined." Thurston Metals & Supply Co. v. Taylor, 230 Va. 475, 483, 339 S.E.2d 538, 543 (1986).

Combining these lines of jurisprudence existing at the time Shevlin Smith executed the Release Agreement, Shevlin Smith acted with the "reasonable degree of care, skill, and dispatch" required of an attorney operating in an unsettled area of the law, Ripper, 253 Va. at 202-03, 482 S.E.2d at 835-36, even though this Court subsequently held that such a release was not governed by the then-applicable version of Code § 8.01-35.1.  Cox, 271 Va. at 152-53, 624 S.E.2d at 22-23. Reasonable minds could not differ on this point.  As a matter of law, Shevlin Smith did not breach its duty to McLaughlin by failing to correctly anticipate our holding in Cox.

3.   Resolution Of This Issue And Disposition Of This Appeal

We reverse the circuit court's judgment in denying Shevlin Smith's second plea in bar.  That plea in bar should have been sustained, thereby establishing the partial bar to McLaughlin's recovery that Shevlin Smith was not liable in malpractice by having failed to correctly anticipate how our decision in Cox would affect the executed Release Agreement.

Even if the circuit court had not committed this error, however, the entire case would not have been dismissed. McLaughlin pled additional theories regarding how Shevlin Smith

16

breached its duty, unrelated to the failure to correctly anticipate our holding in Cox.  Shevlin Smith did not challenge these other theories in a demurrer or plea in bar, and thus McLaughlin could properly proceed to trial on them.

Specifically, the complaint alleged the following conduct as additional breaches of Shevlin Smith's duty:

e. incorrectly pleading that [the firm Graham & Smith] was a partnership law firm, when in fact it was a trade name for a law firm owned solely by John Graham. The Shevlin Defendants failed to advise [McLaughlin] that because Schewe was actually an employee of Graham, that Graham was personally vicariously liable for damages to [McLaughlin] arising from breaches of care in the malpractice case;

. . . .

g. failing to research and identify substantial personal assets and funds of John Graham available for collection in addition to his equity in real estate located in Fairfax County, Virginia, including the law office condominium . . . and other business interests in Virginia Beach, as well as other interests in real estate and business assets located in Virginia prior to advising [McLaughlin] to execute the Settlement Agreement and Joint Tortfeasor Release;

h. failing to inform [McLaughlin] that the substantial, personally-owned assets of John Graham would be attachable as a result of any potential judgment against Schewe, Graham[, and the firm Graham & Schewe], or that the Graham assets would be available to a universal settlement;

i. failing to fully advise and inform [McLaughlin] that the available resources from Graham and [the firm Graham & Schewe] would include the future incomes to be generated by Schewe and Graham individually, as well as the accounts receivable of [the firm Graham & Schewe];

17

j. failing to advise [McLaughlin] that their allegiance to John Graham and their personal friendships with Graham provided a basis for excluding him from the [legal malpractice] complaint and precluded their exercise of independent judgment on behalf of [McLaughlin] thereby constituting a conflict of interest, which was not fully appreciated, explained nor disclosed to [McLaughlin], to the degree that they could not independently and zealously represent [McLaughlin] and achieve his goal of maximizing his recovery for his damages and losses which greatly exceeded the amount of settlement[.]

In accordance with these pleadings, after the close of evidence the circuit court held that McLaughlin was permitted to argue to the jury that Shevlin Smith's failure to advise McLaughlin about Graham was a basis to find that Shevlin Smith breached its duty to McLaughlin. As this holding has not been assigned error, it is the law of the case. Maine v. Adams, 277 Va. 230, 242, 672 S.E.2d 862, 868-69 (2009).[4] Thus, even if Shevlin Smith's plea in bar had been sustained, McLaughlin's case would have been submitted to the jury on a viable theory of breach not relating to Shevlin Smith's failure to correctly anticipate a judicial ruling.

Nevertheless, the jury was incorrectly permitted to find Shevlin Smith negligent on the evidence introduced at trial

---

[4] McLaughlin also pled that Shevlin Smith breached its duty by "failing to sue John Graham individually, as the sole owner of [the firm Graham & Schewe]." The circuit court held that McLaughlin was prohibited from arguing to the jury that this constituted a breach of Shevlin Smith's duty to McLaughlin. As this holding has not been assigned as error, it too is the law of the case. Maine, 277 Va. at 242, 672 S.E.2d at 868-69.

supporting the theory that Shevlin Smith breached its duty by failing to correctly anticipate our holding in Cox, and it is impossible to know upon which theory of breach the jury awarded judgment in favor of McLaughlin. We therefore reverse the circuit court's order affirming the jury's award finding Shevlin Smith liable to McLaughlin, and vacate that award. See Exxon Mobil Corp. v. Minton, 285 Va. 115, 132-33, 737 S.E.2d 16, 28 (2013).

As this leaves McLaughlin's viable theories of Shevlin Smith's breach subject to retrial on remand, we will address additional issues presented to us on appeal that "probably will arise upon remand." Velocity Express Mid-Atlantic, Inc. v. Hugen, 266 Va. 188, 203, 585 S.E.2d 557, 566 (2003).

B.    Damages Recoverable In A Legal Malpractice Claim: The Collectibility Of A Claim Lost Because Of Malpractice

Assignment of error 3 reads:

The circuit court erred in permitting [McLaughlin] to recover more in this action than he could have collected from [Schewe, Volzer, and their respective law firms] in the absence of Shevlin Smith's alleged malpractice.

A. The court erred in ruling that Virginia does not recognize "collect[i]bility" as an element of legal malpractice cases.

B. The court erred in refusing to order a new trial or remittitur because [McLaughlin] did not carry his evidentiary burden of showing he could have collected the $5.75 million verdict amount from [Schewe, Volzer, and their respective law firms] but for the alleged malpractice of Shevlin Smith.

19

Assignment of error 4 reads:

The circuit court erred in failing to provide jury instructions that explained "collect[i]bility" and/or that proximate cause for damages in this trial required a showing that McLaughlin could have prevailed against and recovered damages from [Schewe, Volzer, and their respective law firms] but for Shevlin Smith's alleged malpractice.

A. The court erred in giving Instruction 8-2A which is unclear and fails to prevent [McLaughlin] from recovering more in this action than he could have collected from [Schewe, Volzer, and their respective law firms] in the absence of Shevlin Smith's alleged malpractice.

B. The court further erred in refusing Instructions C-1, C-2 and C-3.

1.   Standard Of Review

Whether a factual issue constitutes a prima facie element of a claim, or is an affirmative defense, is a question of law reviewed de novo.  See New Dimensions, Inc. v. Tarquini, 286 Va. 28, 33, 743 S.E.2d 267, 269 (2013); Seyfarth, Shaw, Fairweather & Geraldson v. Lake Fairfax Seven Ltd. P'ship, 253 Va. 93, 96, 480 S.E.2d 471, 473 (1997) (undertaking a de novo analysis to establish an element of an attorney's prima facie case "to recover legal fees from a present or former client").

2.   Collectibility Is Relevant To Legal Malpractice Claims

In considering Shevlin Smith's motion for remittitur and for a new trial, the circuit court held that "collectibility" is not probative of the correct measure of a legal malpractice plaintiff's damages.  This was error.

20

"There is no single measure of damages in a legal malpractice case, and, generally, the appropriate measure must be determined by the facts and circumstances of each case." Lyle, 249 Va. at 435, 457 S.E.2d at 33. Collectibility is implicated when the injury claimed by the legal malpractice plaintiff is the loss of an otherwise viable claim. That is, collectibility limits the measure of the legal malpractice plaintiff's damages to how much the legal malpractice plaintiff could have actually recovered from the defendant in the underlying litigation absent the attorney's negligence, not simply to the face value of the lost claim. McLaughlin contends that collectibility is irrelevant to legal malpractice claims. We disagree.

"[For] a legal malpractice [claim], the fact of negligence alone is insufficient to support a recovery of damages. The client must prove that the attorney's negligence proximately caused the damages claimed." Campbell, 244 Va. at 352, 421 S.E.2d at 436. Moreover, "[a]n attorney is liable only for actual injury to his client and damages will be calculated on the basis of the value of what is lost by the client." Duvall, Blackburn, Hale & Downey v. Siddiqui, 243 Va. 494, 497, 416 S.E.2d 448, 450 (1992).

Consequently, collectibility is relevant because a legal malpractice plaintiff's damages for a lost claim can only be

21

measured by the amount that could have actually been collected from the defendant in the underlying action in the absence of the attorney's negligence.  Entry of judgment against the defendant in the underlying claim does not guarantee collection of the entire award.  Instead, successfully prosecuting a claim to judgment is only half of the marathon that is redressing an injury in our judicial system.  Once armed with a judgment, a plaintiff then has 20 years to collect that award under Code § 8.01-251(A),[5] which can be frustrated by a number of factors.  And if the legal malpractice plaintiff would have been unable to collect the full value of his judgment awarded in the underlying litigation for any reason other than the attorney's negligence, then the difference between the hypothetical judgment award and the diminished value of what could have been collected is not an injury proximately caused by the attorney's negligence.  Such a loss is not recoverable in a legal malpractice claim.  See Staples v. Staples, 85 Va. 76, 85, 7 S.E. 199, 203 (1888).

Although we hold that collectibility is relevant to legal malpractice claims, it is not an element of a legal malpractice plaintiff's prima facie case.  We have held that a legal malpractice plaintiff bears the "evidentiary burden" to prove

---

[5] The 20 years to issue an execution or bring an action on a judgment may be extended for successive 20 year periods if appropriate steps are taken.  Code § 8.01-251(B).

the value of his lost claim, that he would have prevailed at trial on that claim, and the amount he would have been awarded by the fact finder on that claim.  Campbell, 244 Va. at 352-53, 421 S.E.2d at 436-37; see Williams v. Joynes, 278 Va. 57, 62, 677 S.E.2d 261, 264 (2009).  But we do not place the burden on a legal malpractice plaintiff to also prove the value of the underlying judgment that he would have been able to collect absent the attorney's negligence.

In reaching this conclusion, we recognize a split among the states.  Some courts "conclude that the burden is more properly placed on the [legal malpractice] plaintiff to prove the amount she would have actually collected from the original [defendant] as an element of her malpractice claim," as this position "is more consistent with a plaintiff's burden of proof in negligence actions generally."  Klump v. Duffus, 71 F.3d 1368, 1374 (7th Cir. 1995) (applying Illinois state law).  In addition to Illinois, courts in California, Florida, Georgia, Iowa, Massachusetts, Nebraska, New York, North Carolina, Ohio, South Dakota, and Texas have adopted this position.  See DiPalma v. Seldman, 33 Cal. Rptr.2d 219, 223 (Cal. Ct. App. 1994); Fernandes v. Barrs, 641 So. 2d 1371, 1376 (Fla. Dist. Ct. App. 1994); McDow v. Dixon, 226 S.E.2d 145, 147-48 (Ga. Ct. App. 1976); Whiteaker v. State, 382 N.W.2d 112, 115 (Iowa 1986); Jernigan v. Giard, 500 N.E.2d 806, 807 (Mass. 1986); Eno

23

v. Watkins, 429 N.W.2d 371, 372-73 (Neb. 1988); McKenna v. Forsyth & Forsyth, 720 N.Y.S.2d 654, 657-58 (N.Y. App. Div. 2001); Rorrer v. Cooke, 329 S.E.2d 355, 369 (N.C. 1985); Paterek v. Petersen & Ibold, 890 N.E.2d 316, 321 (Ohio 2008); Haberer v. Rice, 511 N.W.2d 279, 285 (S.D. 1994); Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. National Dev. & Research Corp., 299 S.W.3d 106, 112 (Tex. 2009).

Today, however, we join the "growing trend" to place the burden of pleading and disproving collectibility on the negligent attorney as an affirmative defense. Schmidt v. Coogan, 335 P.3d 424, 426 (Wash. 2014). It is unfair to presume that a silent record means that a judgment is uncollectible, particularly when, as in Virginia, the law allows for judgments to be collected over a long period of time. Id. at 428-29. Moreover, the negligent attorney is in a better position to bear the burden of proving uncollectibility. Id. And, finally, it is more equitable to have the attorney disprove the collectibility of a judgment, as collectibility becomes relevant only after a legal malpractice plaintiff proves a prima facie case establishing malpractice. Id. In addition to Washington, we join the company of courts in Alaska, the District of Columbia, Indiana, Maine, Michigan, New Hampshire, New Jersey, Oregon, and Pennsylvania, all of which have endorsed this position. Power Constructors v. Taylor &

24

_Hintze_, 960 P.2d 20, 31 (Alaska 1998); _Smith v. Haden_, 868 F. Supp. 1, 2 (D.D.C. 1994); _Clary v. Lite Machs. Corp._, 850 N.E.2d 423, 440 (Ind. Ct. App. 2006); _Jourdain v. Dineen_, 527 A.2d 1304, 1306 (Me. 1987); _Teodorescu v. Bushnell, Gage, Reizen & Byington_, 506 N.W.2d 275, 278 (Mich. Ct. App. 1993); _Carbone v. Tierney_, 864 A.2d 308, 319 (N.H. 2004); _Hoppe v. Ranzini_, 385 A.2d 913, 920 (N.J. Super. Ct. App. Div. 1978); _Ridenour v. Lewis_, 854 P.2d 1005, 1006 (Or. Ct. App. 1993); _Kituskie v. Corbman_, 714 A.2d 1027, 1032 (Pa. 1998).

C.   Damages Recoverable In A Legal Malpractice Claim: Non-Pecuniary, Non-Economic Damages Such As Pain And Suffering

Assignment of cross-error 3 reads:

The [circuit] court erred as a matter of law when it determined that non-economic damages were unavailable to McLaughlin.

Assignment of cross-error 4 reads:

The [circuit] court erred as a matter of law in ruling that pain and suffering is not available in a contract action.

Assignment of cross-error 6 reads:

The [circuit] court erred as a matter of law in ruling that wrongful incarceration damages are not available in a legal malpractice [claim].

1.   Standard Of Review

The types of injuries for which damages are recoverable in a legal malpractice claim is a question of law reviewed de novo.  See _Sanford v. Ware_, 191 Va. 43, 47-51, 60 S.E.2d 10,

25

12-14 (1950) (providing a de novo analysis of whether non-pecuniary damages were recoverable in a particular tort claim).

2.    Non-Pecuniary Damages Are Not Recoverable In Legal Malpractice Claims

The circuit court held that McLaughlin could not recover damages in the form of pain and suffering, and left unresolved whether McLaughlin could recover damages in the form of wrongful incarceration.  This was not error.

"Every attorney" is liable for "any damage sustained by the client" because of the attorney's negligence.  Code § 54.1-3906 (emphasis added).  "The word 'any,' like other unrestrictive modifiers[,] is generally considered to apply without limitation" unless the context indicates otherwise.  Sussex Cmty. Servs. Ass'n v. Virginia Soc'y for Mentally Retarded Children, Inc., 251 Va. 240, 243, 467 S.E.2d 468, 469 (1996).  In this case, the context in which the General Assembly directs damages to be awarded – a legal malpractice claim – requires a restricted understanding of the term "any" so that it does not apply without limitation.

Specifically, the duty that an attorney must "exercise a reasonable degree of care, skill, and dispatch in rendering the services for which the attorney was employed," Ripper, 253 Va. at 202-03, 482 S.E.2d at 836, does not arise in tort, but is an "[i]mplicit" duty arising from the attorney-client "contractual

26

relationship" so as to be a "contractually implied." Cox, 271 Va. at 152, 624 S.E.2d at 22 (internal quotation marks omitted). Thus, the "any damage" to be recovered by operation of Code § 54.1-3906 in the event of an attorney's breach of his contractually implied duties is necessarily any contract damage, because the legal malpractice cause of action "is one for breach of contract." Id. For example, although the attorney's contractually implied duties "employ tort concepts," the contractual nature of the cause of action defines the recoverable damages so that "punitive damages may not be awarded" in a legal malpractice claim "in the absence of an independent, willful tort giving rise to such damages." O'Connell v. Bean, 263 Va. 176, 180-81, 556 S.E.2d 741, 743 (2002).

The question of what damages are recoverable in a legal malpractice claim is therefore governed by our law pertaining to what damages are recoverable in a breach of contract claim. A breach of contract claim seeks to "compensate [the plaintiff] for losses suffered as a result of a breach of duties assumed only by agreement." Sensenbrenner v. Rust, Orling & Neale, Architects, Inc., 236 Va. 419, 425, 374 S.E.2d 55, 58 (1988). Damages in a breach of contract claim, unlike those recoverable in a tort claim, "are subject to the overriding principle of compensation" so that contract damages "are limited to those

27

losses which are reasonably foreseeable when the contract is made." Kamlar Corp. v. Haley, 224 Va. 699, 706, 299 S.E.2d 514, 517 (1983). Regardless of the foreseeability of non-pecuniary injury incident to a breach of contract, however, "[a]s a general rule, damages for breach of contracts are limited to the pecuniary loss sustained." Sunrise Continuing Care, LLC v. Wright, 277 Va. 148, 156, 671 S.E.2d 132, 136 (2009) (emphasis added) (internal quotation marks and citation omitted).

That is, regardless of how foreseeable non-pecuniary loss flowing from a contractual breach may be, such non-pecuniary injury is not recoverable in a breach of contract claim. See Joseph M. Perillo, 11-59 Corbin on Contracts § 59.1 (Joseph M. Perillo ed., rev. ed. 2014) (recognizing that, although some courts make this holding based on the remoteness of non-pecuniary damages, "it seems apparent that most courts have forged 'a rule of policy defining the limits of business risk.'"). To this end, we have previously held that the non-pecuniary damages of "humiliation or injury to feelings are not recoverable in an action for breach of contract." Isle of Wight Cnty. v. Nogiec, 281 Va. 140, 148, 704 S.E.2d 83, 86 (2011) (internal quotation marks and citation omitted). The "rule," then, is clear: "tort damages" - including non-pecuniary damages such as mental anguish, emotional distress,

28

and humiliation - "are not recoverable for breach of contract." Id. at 149, 704 S.E.2d at 87; see also Sea-Land Service, Inc. v. O'Neal, 224 Va. 343, 353-54, 297 S.E.2d 647, 653 (1982). As this principle holds true for all non-pecuniary, non-economic injury caused by the attorney's malpractice, such loss is not recoverable as damages in a legal malpractice claim. A legal malpractice plaintiff may recover only pecuniary damages proximately caused by an attorney's breach of the contractually implied duties.[6]

McLaughlin fails to convince us otherwise. While the "general rule" against recovering non-pecuniary damages in

---

[6] Today we join New York in categorically barring the recovery of non-pecuniary damages in a legal malpractice claim. See Dombrowski v. Bulson, 971 N.E.2d 338, 340-41 (N.Y. 2012). Having already barred such damages when the legal malpractice occurred in a civil case, the Court of Appeals of New York relied solely on policy considerations to prohibit the recovery of non-pecuniary damages when the legal malpractice occurred in a criminal matter:

> Allowing this type of recovery would have, at best, negative and, at worst, devastating consequences for the criminal justice system. Most significantly, such a ruling could have a chilling effect on the willingness of the already strapped defense bar to represent indigent accused. Further, it would put attorneys in the position of having an incentive not to participate in post-conviction efforts to overturn wrongful convictions.

Id. We also note that many states do allow non-pecuniary damages to be recovered in a legal malpractice claim, at least in some circumstances, but there is wide disagreement over the particular circumstances and justifications allowing for such a recovery. See Miranda v. Said, 836 N.W.2d 8, 25-27 & n.12 (Iowa 2013) (collecting cases); Vincent v. DeVries, 72 A.3d 886, 893-95 & n.3 (Vt. 2013) (collecting cases).

29

breach of contract claims does have an exception, it relates only to whether punitive damages are available.  See Wright v. Everett, 197 Va. 608, 615, 90 S.E.2d 855, 860 (1956) (quoting 15 Am. Jur. Damages § 273, at 708-09 (1938)).

Moreover, the distinction between direct and consequential damages does not relate to whether the loss to be recovered is pecuniary or non-pecuniary, as McLaughlin argues, but instead to how naturally occurring (direct) or not-ordinarily-predictable but still contemplated (consequential) the claimed pecuniary damage actually is.  See Roanoke Hosp. Assoc. v. Doyle & Russell, Inc., 215 Va. 796, 801-02, 214 S.E.2d 155, 160 (1975).  McLaughlin's argument appears to overlap with the Restatement's directive that "[r]ecovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result."  Restatement (Second) of Contracts § 353 (1981) (emphasis added).  But we have never adopted this principle for breach of contract claims generally, and decline to do so today to create an exception for legal malpractice claims specifically.

Finally, McLaughlin notes that we have previously recognized that "wrongful incarceration" is the "injury suffered" from "legal malpractice arising out of the defense of

30

a criminal charge."  Cox, 271 Va. at 149, 624 S.E.2d at 20.

This remains a true statement of law and fact.  We do not deny

that wrongful incarceration, and its accompanying pecuniary and

non-pecuniary injuries, are types of losses actually sustained

by some legal malpractice plaintiffs.  But what Cox did not

address, and what we decide today, is whether non-pecuniary

damages are recoverable in a legal malpractice claim.  They are

not.  However, such non-pecuniary injuries are still

compensable and may be recovered from the Commonwealth itself,

upon an act of legislative grace, if the General Assembly

passes an Act for the relief of the wrongfully incarcerated

individual.  E.g., id. at 145-46, 624 S.E.2d at 18.[7]

D.    Calculating McLaughlin's Pecuniary Damages

Assignment of cross-error 7 reads:

> The [circuit] court erred in excluding from the damage
> calculation the time McLaughlin was incarcerated for
> an escape attempt.

1.    Standard Of Review

Determining whether particular injuries suffered by a

legal malpractice plaintiff are recoverable in a legal

---

[7] Code § 8.01-195.11 establishes for what injuries the General Assembly may compensate certain wrongfully incarcerated individuals, but does not list non-pecuniary damages.  However, the General Assembly notes that this provision only "provide[s] directions and guidelines for the compensation of persons who have been wrongfully incarcerated."  Code § 8.01-195.10.  It remains the General Assembly's prerogative to decide whether to compensate a wrongfully incarcerated individual for non-pecuniary loss.

31

malpractice claim is a question of law reviewed de novo. <u>Crump v. Ficklin</u>, 1 Patton & Heath 201, 205, 1855 Va. LEXIS 80, at *7-8 (Special Ct. App. 1855) (providing a de novo analysis of the "proper measure of damages" that may be awarded for a particular claim).

2. <u>McLaughlin Was Properly Denied The Ability To Recover Injuries Caused By His Criminal Escape Conviction</u>

The circuit court ordered that McLaughlin could not recover any lost income while he was incarcerated for his criminal escape conviction. McLaughlin assigns error to this limitation on his recoverable damages on two bases. Neither reason requires us to find that the circuit court erred.

First, McLaughlin argues that the Virginia State Bar did not explicitly set forth in any documentation that his bar license revocation was connected to the attempted escape. It is unclear how this argument is relevant to the circuit court's ruling. Regardless of why McLaughlin lost his bar license, McLaughlin was still incarcerated for the criminal escape conviction and was thus unable to make <u>any</u> income during that time period, from legal services or otherwise. In any event, the Virginia State Bar issued a show cause order to McLaughlin based upon his escape conviction, and McLaughlin voluntarily surrendered his license before the State Bar could take further action. This record was sufficient to warrant the circuit

court's holding that McLaughlin's criminal escape conviction caused the surrender of his law license.

Second, McLaughlin argues that he would not have attempted escape, and therefore would not have been convicted for criminal escape or had his law license revoked, but for his wrongful incarceration resulting from his attorneys' malpractice in the criminal matter. But the injuries which arose because of McLaughlin's criminal escape conviction, which itself occurred after his attorneys' legal malpractice, are not attributable to his attorneys' legal malpractice. As the circuit court correctly observed:

> You simply can't blame the criminal lawyers for the decision made by Mr. McLaughlin to [run] out of the courthouse when he had no right to do so. That was his – an act of his own free will which was not – it's completely separate . . . from the acts of malpractice committed by [McLaughlin's] criminal lawyers and he has to take the consequences for that.

Phrased differently, McLaughlin's criminal escape conviction was an "intervening act" that broke "the chain of causal connection between [the attorneys'] original act of negligence and subsequent injury." Noakes v. Commonwealth, 280 Va. 338, 348, 699 S.E.2d 284, 290 (2010) (internal quotation marks omitted). McLaughlin's criminal escape conviction was neither "reasonably foreseeable" at the time of the legal malpractice, nor was it "put into operation by the [attorneys'] negligent acts." Id. at 348-49, 699 S.E.2d at 290 (internal

quotation marks and citation omitted).  McLaughlin's criminal escape conviction was therefore a "superseding cause" which "constitute[d] a new effective cause and operate[d] independently of any other act, making it and it only the proximate cause of the injury" of lost wages for the time McLaughlin spent incarcerated for that conviction.  Kellermann v. McDonough, 278 Va. 478, 494, 684 S.E.2d 786, 794 (2009) (internal quotation marks and citation omitted).

E.   McLaughlin's Opening Statement And Closing Argument

Assignment of error 2 reads:

The circuit court erred in allowing [McLaughlin] to ask for millions more in damages than his ad damnum [clause] during both opening statement and closing argument; permitting the excessive request was also error where the massive sum requested was not grounded in the pleadings or evidence and violated Va. Code § 8.01-379.1

1.   Standard Of Review

The "determinations regarding the propriety of argument by trial counsel are matters left to the sound discretion of the circuit court."  Wakole v. Barber, 283 Va. 488, 492, 722 S.E.2d 238, 240 (2012) (internal quotation marks and citation omitted).  "We will not reverse a circuit court's ruling unless such ruling was an abuse of discretion and the rights of the complaining litigant have been prejudiced."  Id.

34

2.   <u>Awards Exceeding The Ad Damnum Clause May Not Be Requested</u>

As pled in his legal malpractice complaint, McLaughlin's ad damnum clause alleged $6 million in damages.  Despite this figure as pled and the circuit court's denial of McLaughlin's request to amend that ad damnum clause, McLaughlin's counsel requested approximately $10 million in damages from the jury in both his opening statement and closing argument.  However, the circuit court overruled Shevlin Smith's objections to McLaughlin's $10 million request.  This was error.

The General Assembly permits "any party in any civil action [to] inform the jury of the amount of damages sought by the plaintiff in the opening statement or closing argument, or both."  Code § 8.01-379.1.  Pursuant to this authority, a plaintiff has the power to request from the fact finder either "one lump sum [or] a specific amount for each element of damages sought <u>as long as</u> there is evidence in the record to support each element of damages claimed and <u>the total requested is no more than the ad damnum</u>."  <u>Wakole</u>, 283 Va. at 494, 722 S.E.2d at 241 (emphasis added).

Accordingly, a plaintiff may not request from the jury, in either opening statement or closing argument, an amount of damages that exceeds the amount of the plaintiff's ad damnum.  Allowing such an improper statement as to the award's value may mislead the fact finder by skewing upwards, at the outset of

the trial and immediately before the award is to be determined, the legally permissible range of an award. Such a tactic contravenes the attorney's obligation to "be just to opposing litigants" in his arguments. Atlantic Coast Realty Co. v. Robertson, 135 Va. 247, 263, 116 S.E. 476, 581 (1923) ("[An attorney] has no right . . . to urge a decision which is favorable to his client by arousing sympathy, exciting prejudice, or upon any ground which is illegal."). The circuit court committed a clear error of judgment in holding otherwise.

### III. Conclusion

We reverse the circuit court's denial of Shevlin Smith's second plea in bar, reverse the circuit court's order affirming the jury award, vacate the jury award, and remand this case to the circuit court for further proceedings consistent with this opinion.[8]

Reversed, vacated, and remanded.

---

[8] We do not address the remaining assignments of error and cross-error. At least one issue they implicate will not likely arise upon remand, that is, whether it was error to allow the jury to review judicial opinions in determining Shevlin Smith's breach. Other issues that may arise upon remand may be informed by different pre-trial considerations or facts introduced at trial that are not before us. These issues include whether amendment of McLaughlin's ad damnum clause should be allowed, the propriety of McLaughlin's expert testifying as to damages, and whether Shevlin Smith's motion for remittitur and new trial should have been granted. We express no opinion on these issues.

JUSTICE McCLANAHAN, concurring in part and dissenting in part.

I concur in the Court's opinion in all respects except for its holding that a legal malpractice plaintiff alleging the loss of a viable claim is not required to prove the collectibility of any judgment he would have obtained on the underlying lost claim. In placing the burden on the attorney defendant to prove the uncollectibility of any judgment a plaintiff would have obtained in the underlying litigation, the majority has relieved the legal malpractice plaintiff of the burden of proving the actual injury proximately caused by the defendant's malpractice.

As the majority acknowledges, "[a]n attorney is liable only for the actual injury to his client and damages will be calculated on the basis of the value of what is lost by the client." Duvall, Blackburn, Hale & Downey v. Siddiqui, 243 Va. 494, 497, 416 S.E.2d 448, 450 (1992) (emphasis added). We have long held that it is the plaintiff's burden to prove the actual injury sustained as a result of the attorney's malpractice, including the collectibility of a lost claim. Staples v. Staples, 85 Va. 76, 85, 7 S.E. 199, 203 (1888) ("[T]he extent of the damages sustained by the complainant must be affirmatively shown"). Thus, "when a debt is alleged to have been lost by the attorney's negligence, it must be shown that

it was a subsisting debt, and that the debtor was solvent."

Id.; see also Hendrix v. Daugherty, 249 Va. 540, 544-47, 457

S.E.2d 71, 74-76 (1995) (plaintiffs must prove damages measured

by what they could have recovered in the underlying action);

Campbell v. Bettius, 244 Va. 347, 352, 421 S.E.2d 433, 436

(1992) (plaintiffs' "evidentiary burden [in legal malpractice

action] was to show what they would have recovered" if their

attorney had not committed malpractice).[1]

Because a plaintiff is required under Virginia law to

prove the actual injury caused by an attorney's malpractice,

the collectibility of any judgment that a plaintiff would have

obtained in litigation of a lost claim necessarily defines the

measure of the plaintiff's damages.  Proof that the plaintiff

would have obtained a specific judgment in the underlying lost

claim only establishes the loss caused by the underlying

---

[1] The "essence" of the solvency requirement "is that the malpractice plaintiff show that he could have recovered a judgment in an amount which was collectible."  McDow v. Dixon, 226 S.E.2d 145, 147 (Ga. Ct. App. 1976).  Virginia's rule placing the burden of collectibility upon the plaintiff is so well-established that it has been cited as support by other courts that have likewise placed the burden of collectibility upon the plaintiff.  See id. (citing, among other authorities, Staples v. Staples, 85 Va. 76, 7 S.E. 199 (1888), for the general rule placing the burden of collectibility on plaintiff); Beeck v. Aquaslide 'N' Dive Corp., 350 N.W.2d 149, 160 (Iowa 1984) (same; collecting cases, and calling this "the rule that is applied generally"); Jernigan v. Giard, 500 N.E.2d 806, 807 (Mass. 1986) (same); Taylor Oil Co. v. Weisensee, 334 N.W.2d 27, 29-30 nn.2-3 (S.D. 1983) (same).

defendant; it does not establish the loss caused by the attorney who represented the plaintiff in the underlying litigation. For example, proof of the amount of the judgment that McLaughlin would have obtained against his criminal defense attorneys only establishes the loss to McLaughlin resulting from the malpractice committed by his criminal defense attorneys. This loss is distinct from the loss sustained by McLaughlin resulting from the alleged malpractice of Shevlin Smith. In order to prove the actual injury caused by Shevlin Smith's alleged malpractice, McLaughlin would have to prove the amount of the judgment that would have been collectible from his criminal defense attorneys. Under the rule announced by the Court today, however, a legal malpractice plaintiff seeking damages for a lost claim is no longer required to prove the actual injury caused by an attorney's malpractice.

Other states that similarly require a legal malpractice plaintiff to prove actual injury resulting from the attorney's malpractice have imposed upon the plaintiff the burden of proving the collectibility of a lost claim. "'As the general measure is the loss "actually sustained," when the loss arises from negligently prosecuting a prior case the client has the burden of proving not only the amount of the judgment he would have obtained but for the negligence, but also what he would

39

have collected.'"  Eno v. Watkins, 429 N.W.2d 371, 372 (Neb.

1988) (quoting Pickens, Barnes & Abernathy v. Heasley, 328

N.W.2d 524, 526 (Iowa 1983)).  This is so because

"collectibility is logically and inextricably linked to the

legal-malpractice plaintiff's damages, for which the plaintiff

bears the burden of proof.  In proving what was lost, the

plaintiff must show what would have been gained."  Paterek v.

Petersen & Ibold, 890 N.E.2d 316, 321 (Ohio 2008).  Therefore,

a legal malpractice plaintiff "must prove that the attorney she

is suing has indeed injured her through neglecting to properly

handle a lawsuit that would have generated recompense.  And her

injury is measured by what she actually would have collected."

Id. at 321-22.[2]

----

[2] See also Klump v. Duffus, 71 F.3d 1368, 1374 (7th Cir.
1995) (the "burden is more properly placed on the plaintiff to
prove the amount she would have actually collected from the
original tortfeasor as an element of her malpractice claim");
Garretson v. Miller, 121 Cal. Rptr.2d 317, 323 (Cal. Dist. Ct.
App. 2002) (legal malpractice plaintiff must prove that she
would have obtained favorable judgment and "that the underlying
judgment could have been collected"); Fernandes v. Barrs, 641
So.2d 1371, 1376 (Fla. Dist. Ct. App. 1994) (legal malpractice
plaintiff must "prove the collectibility of the judgment which
would have been obtained in the underlying action but for the
attorney's negligence, in order to establish the amount of
damages proximately caused by the negligence"); George v.
Caton, 600 P.2d 822, 830 (N.M. Ct. App. 1979) (legal
malpractice plaintiff has burden of proving the "degree of
collectibility of such judgment," which constitutes the "value
of the lost claim"); Rorrer v. Cooke, 329 S.E.2d 355, 361 (N.C.
1985) (in order to prove "that but for the attorney's
negligence plaintiff would not have suffered the loss," the
legal malpractice plaintiff must prove that "[t]he judgment

Accordingly, I dissent from that part of the Court's opinion placing upon the legal malpractice defendant the burden of proving the uncollectibility of any judgment the plaintiff would have obtained on a lost claim. This Court should not abandon the long-standing rule in Virginia that the plaintiff bears the burden of proving the amount of actual injury caused by the attorney's malpractice.

would have been collectible"); Haberer v. Rice, 511 N.W.2d 279, 285 (S.D. 1994) (legal malpractice plaintiff must prove he "would not have only prevailed in the underlying claim but that a judgment in the [plaintiff's] favor would have been collectible"); Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. National Dev. and Research Corp., 299 S.W.3d 106, 112 (Tex. 2009) (legal malpractice plaintiff must prove amount of damages that would have been collectible).